S05A0556. COTTON v. THE STATE.
(613 SE2d 628)

CARLEY, Justice.

After a jury trial, Kenneth Cotton was found guilty of felony murder while in the commission of aggravated assault on Brandon Watkins. The trial court entered a judgment of conviction on the guilty verdict, and imposed a sentence of life imprisonment. Thereafter, the trial court denied a motion for new trial, and Cotton appeals.[1]

1. Cotton initiated a confrontation, claiming that he heard that Watkins had accused him of using drugs. The apparent source of this information was Cotton's former girlfriend, whom the victim also once dated. Watkins admitted making the accusation, and asked Cotton what he intended to do about it. Cotton responded by drawing a gun. The unarmed victim reacted by cursing and threatening Cotton, but then he walked away. Cotton followed, and Watkins struck him with his fist. Cotton fired three shots, fatally wounding the victim. At trial, Cotton relied on a justification defense.

When construed most strongly in support of the guilty verdict, the evidence was sufficient to authorize a rational trier of fact to find proof beyond a reasonable doubt of Cotton's guilt of felony murder. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Over Cotton's objection, the trial court permitted the State to show that he committed a "similar crime" when, on a previous and unrelated occasion, he shot his cousin after an argument involving a girl. Cotton urges that this was error, because the two shootings were not sufficiently similar and, even if they were, the prejudice arising from admission of the evidence outweighed its relevancy.

There was no dispute that Cotton shot Watkins, and the evidence that he also shot his cousin was admitted for the limited purpose of showing his course of conduct and intent. "When similar transaction

---

[1] The murder was committed on January 3, 2003, and the grand jury indicted Cotton on March 28, 2003. The jury returned the guilty verdict on November 11, 2003, and the trial court entered the judgment of conviction and imposed the life sentence the following day. The motion for new trial was filed on December 2, 2003, and was denied on October 19, 2004. Cotton filed a notice of appeal on November 16, 2004, and the case was docketed in this Court on December 3, 2004. The appeal was submitted for decision on January 24, 2005.

evidence is admitted for these purposes, a lesser degree of similarity is required than when such evidence is introduced to prove identity. [Cits.]" *Smith v. State*, 273 Ga. 356, 357 (2) (541 SE2d 362) (2001). The prior assault evidence showed that, where interference with his relationship with women was concerned, Cotton had a propensity to initiate a confrontation with an unarmed male victim and then to escalate the argument by drawing and firing a weapon without provocation. The prior act thus was "sufficiently similar to the present shooting so that proof of [the] former attack[ ] on [an] unarmed [man] tends to show that [Cotton] was likely to respond to a disagreement with a gun." *Gentry v. State*, 250 Ga. 802, 803 (1) (301 SE2d 273) (1983). This propensity was relevant to rebut the claim that Cotton did not commit aggravated assault because he shot Watkins in self-defense. Having correctly determined that the previous assault was admissible solely for the purpose of illustrating Cotton's course of conduct and intent in shooting Watkins, the trial court was not required to make any additional express ruling to the effect that the limited relevancy of the evidence outweighed its prejudice. *Farley v. State*, 265 Ga. 622, 625 (2) (458 SE2d 643) (1995).

The trial court gave the jury extensive instructions regarding the limited relevancy of the "similar crimes" evidence, both when that evidence was admitted and then in the final charge. Cotton contends that these instructions were erroneous, because "course of conduct" and "intent" are legal terms which the trial court did not define for the jurors. However, he did not submit a written request for any additional charge in connection with the jury's consideration of the prior assault. "[H]aving failed to request a limiting instruction, defendant cannot assert that the trial court erred because it did not give such an instruction." *State v. Belt*, 269 Ga. 763, 764 (505 SE2d 1) (1998).

3. In response to the jury's request, the trial court gave an oral recharge on felony murder, voluntary manslaughter, and self-defense. Thereafter, the jurors indicated that they still were unclear about the elements of the two forms of homicide. In response to this expression of the jury's continuing confusion, the trial court submitted written instructions on felony murder and voluntary manslaughter. In doing so, the trial court did not err, since " ' "it is frequently desirable that instructions which have been reduced to writing be not only read to the jury but also be handed over to the jury. . . ." [Cit.]' " *Anderson v. State*, 262 Ga. 26, 28 (3) (a) (413 SE2d 732) (1992). Indeed, because of the jurors' difficulty in distinguishing between felony murder and voluntary manslaughter, providing them with written instructions was particularly appropriate. See *Elrod v. State*, 222 Ga. App. 704, 708 (4) (475 SE2d 710) (1996).

Cotton urges that, since the jury did not express any confusion about the elements of aggravated assault, the trial court erred by

including a definition of that offense in the written recharge. However, aggravated assault was the predicate felony in the murder count. Accordingly, it was necessary for the trial court to define that crime in responding to the jurors' request for further explanation as to the elements of felony murder.

Cotton also contends that the trial court erred by failing to include in the written recharge any instructions as to self-defense. However, the jury had already received a recharge on justification, and it did not indicate any continuing doubt in that connection. Under these circumstances, the trial court did not err by failing to address self-defense in the written recharge. See *Jordan v. State*, 207 Ga. App. 710, 712 (2) (429 SE2d 97) (1993).

4. During voir dire of the prospective jurors, Kal Oravet, who was employed as a high school administrator, stated that, some years in the past, he dealt with Cotton in connection with unspecified "discipline problems." Contending that this statement was prejudicial, Cotton moved for a mistrial. The trial court excused Mr. Oravet, but Cotton enumerates as error the trial court's failure to grant the motion for mistrial.

A motion for mistrial is not the "proper procedural tool" when an allegedly prejudicial comment is made during voir dire of prospective jurors. *Sharpe v. State*, 272 Ga. 684, 687 (5) (531 SE2d 84) (2000). Moreover, even assuming that Cotton had made a proper request to impanel new jurors, he still would not be entitled to that relief unless the remark was inherently prejudicial and deprived him of his right to a trial by an impartial jury. *Sharpe v. State*, supra at 688 (5). Here, the record shows that the trial court specifically cautioned the other prospective jurors that Mr. Oravet's comment did not expressly identify Cotton as a disciplinary problem, but only cited that as the reason why he knew him. The trial court also asked if anyone on the panel who overheard the remark would be prejudiced by it, and none answered in the affirmative. Thus,

> the transcript shows, at most, that [Mr. Oravet] was the only prospective juror who might harbor . . . prejudice, and he was excused properly for cause. [Cit.] Indeed, the trial court took the additional corrective action of inquiring whether anything said [by Mr. Oravet] during voir dire would prevent the jurors from being fair and impartial, and no prospective juror gave any affirmative response. [Cits.]

*Sharpe v. State*, supra. Accordingly, the trial court did not err in failing to seat a new panel of prospective jurors.

5. Cotton contends that his trial counsel was ineffective for failing to file a demurrer to the indictment. The original motion for

new trial was filed by the trial lawyer himself, who could not be expected to question his own effectiveness. However, the record also indicates that, even though new appellate counsel eventually was appointed to represent Cotton, the motion for new trial was never amended to raise the ineffectiveness issue. This constitutes a failure to assert the matter at the earliest practicable opportunity and, thus, is a waiver of the right to pursue it on appeal. *Bailey v. State*, 264 Ga. 300 (443 SE2d 836) (1994).

The record does contain Cotton's pro se motion for new trial, in which he contended that the failure to file a demurrer challenging the form of the indictment was an instance of trial counsel's ineffectiveness. Since he was represented by new appellate counsel at the time he filed this pro se motion, however, it was unauthorized and without effect. See *Seagraves v. State*, 259 Ga. 36 (376 SE2d 670) (1989); *Cargill v. State*, 255 Ga. 616, 622 (3) (340 SE2d 891) (1986). Compare *Johnson v. State*, 266 Ga. 775, 778 (9) (470 SE2d 637) (1996). Moreover, it appears that Cotton's appellate counsel may have chosen not to adopt and to pursue this claim because it would be meritless. A review of the indictment demonstrates that it is not defective and, even if it were, the failure to file a special demurrer still would not support a finding of the violation of the constitutional right to effective legal representation. *Wallace v. State*, 253 Ga. App. 220, 222 (3) (558 SE2d 773) (2002).

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 23, 2005.

*Daniel D. Morgan*, for appellant.

*Leigh E. Patterson, District Attorney, Kay A. Wetherington, Assistant District Attorney, Thurbert E. Baker, Attorney General, Vonnetta L. Benjamin, Assistant Attorney General*, for appellee.