**SECOND DIVISION**
**BARNES, P. J.,**
**RICKMAN and SELF, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 1, 2017**

# In the Court of Appeals of Georgia

A16A1844. JOHNSON v. STATE.

RICKMAN, Judge.

Cortavious Deshun Johnson was tried by a jury and convicted of armed robbery[1] and possession of a firearm during the commission of a felony (armed robbery).[2] On appeal, Johnson contends that the evidence was insufficient to support his convictions beyond a reasonable doubt. Johnson also contends that the trial court abused its discretion by admitting other-acts evidence pursuant to OCGA § 24-4-404 (b) and when it did not excuse an entire panel of potential jurors after an issue with one potential juror during voir dire, and he received ineffective assistance of counsel. For the following reasons, we affirm.

---

[1] OCGA § 16-8-41 (a).

[2] OCGA § 16-11-106 (b).

On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the defendant guilty of the crimes beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

(Citation and punctuation omitted.) *Hall v. State*, 335 Ga. App. 895 (783 SE2d 400) (2016).

So viewed, the evidence shows that, on the afternoon of October 31, 2014, Johnson approached the victim while she was working at a bank as a teller, and he pushed a card towards her. The card read, "Put The Money in The Bag Or Die." The victim thought that Johnson may be pulling a Halloween prank, but when she asked if he was kidding, he shook his head negatively. The victim again questioned Johnson about his intentions and "he stepped back, he pulled up his shirt, and he showed [her] a gun."

Johnson yelled out "now" and put a bag on the counter in front of the victim. The victim, fearing that Johnson was going to shoot her, picked up the bag, and began to put money in it. As the victim filled the bag with money, Johnson yelled for her to

2

"hurry up, hurry up, hurry up, hurry up," followed by "hundreds, hundreds, hundreds." While Johnson yelled at the victim to grab hundred dollar bills, she put bait money in the bag that was hooked to an alarm system at the bank. At some point, Johnson grabbed the bag from the victim and ran out of the bank.

Another customer at the bank, who was speaking with a different teller, witnessed the victim show a note to the other teller and question if the note was a joke. The customer then observed Johnson raise his shirt to reveal a gun.

A special agent with the Georgia Bureau of Investigation who was investigating the armed robbery, facilitated the release of surveillance photographs depicting the subject who committed the armed robbery to the media. The special agent received information that the person in the surveillance photographs was Johnson. Later in the day, the special agent received information that Johnson may be in the company of a female companion. The special agent was able to receive data from Johnson's female companion's cell phone which revealed her location.

Later in the evening on the date of the armed robbery, a Georgia State Patrol trooper was driving on the highway when he received information that he was near the location of a vehicle in which Johnson may be traveling. Following a police chase involving that vehicle, Johnson was apprehended. A search of the vehicle Johnson

3

was driving was conducted pursuant to a search warrant by a special agent in charge ("SAC") with the Georgia Bureau of Investigation. The SAC recovered cash money from the vehicle including $20 bills that matched the serial numbers on the bait money given to Johnson. In the trunk of the vehicle, the SAC found Johnson's driver's license, along with a loaded pistol.

Four witnesses testified as to two other acts pursuant to OCGA § 24-4-404 (b). The first two other acts witnesses testified about an incident that took place in March 2013. Two women testified that a man pulled a gun and pointed it toward their vehicle during a "road rage" incident while they were driving. Both women identified Johnson as the man who pointed the gun at them.

The second incident took place in South Carolina in August 2014. A woman went to her workplace to cash her paycheck. After cashing her paycheck, she got into her vehicle and a man approached her window. The man asked for her phone number and as she was putting her number into his cellular phone, he pointed a gun at her, and ordered her to give him her money. After the woman heard the gun "click," she gave him money and her phone. The woman identified Johnson as the man who robbed her when given a photographic line-up and when testifying at the trial of this case.

The grand jury returned an indictment charging Johnson with armed robbery, possession of a firearm during the commission of a crime (armed robbery), aggravated assault, and possession of a firearm during the commission of a crime (aggravated assault). Johnson was tried by a jury and found guilty of all the crimes that were charged; the trial court merged his convictions for aggravated assault and possession of a firearm during the commission of a felony (aggravated assault) into his convictions for armed robbery and possession of a firearm during the commission of a felony (aggravated assault) for the purpose of sentencing. Johnson timely filed a motion for new trial, which was denied. It is from this order that Johnson now appeals.

1. Johnson contends that the evidence was insufficient to support his convictions. Specifically, Johnson contends that there was insufficient proof that he used a handgun during the robbery because he only showed the victim a handgun tucked into his pants. We disagree.

OCGA § 16-8-41 (a) provides, in pertinent part, that "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an

5

offensive weapon, or any replica, article, or device having the appearance of such weapon."

> The evidence at trial showed that [Johnson] lifted his shirt and showed the victim a gun when he demanded [money from the victim]. While it is true that [Johnson] did not pull the weapon out of his pants, [Johnson's] display of the gun handle was sufficient to create a reasonable apprehension on the part of the victim that [Johnson] was using an offensive weapon and to cause [her] to comply with [Johnson's] demand for money.

(Punctuation omitted.) *Price v. State*, 289 Ga. App. 763, 765 (1) (658 SE2d 382) (2008).

Furthermore, "[w]here a robbery is committed by the use of a firearm, separate convictions for armed robbery and possession of a firearm during the commission of a crime are specifically authorized by OCGA § 16-11-106 (e)." (Citation omitted.) *Broyard v. State*, 325 Ga. App. 794, 797 (1) (b) (755 SE2d 36) (2014). Thus, the evidence was sufficient to support Johnson's conviction for armed robbery and possession of a firearm during the commission of a crime (armed robbery). See id. at

6

797-798 (1) (b); see also *Price*, 289 Ga. App. at 765 (1); *Forde v. State*, 277 Ga. App. 410, 412 (1) (626 SE2d 606) (2006).[3]

2. Johnson contends that the trial court abused its discretion by admitting other acts evidence pursuant to OCGA § 24-4-404 (b).

OCGA § 24-4-404 (b) provides, in pertinent part,

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In addition, under OCGA § 24-4-403, "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

---

[3] Johnson also challenges the sufficiency of the evidence as to his convictions for aggravated assault and possession of a firearm during the commission of a felony (aggravated assault). However, this contention is moot because those two convictions merged into Johnson's convictions for armed robbery and possession of a firearm during the commission of a felony (armed robbery). See *Long v. State*, 287 Ga. 886, 887-888 (1) (700 SE2d 399) (2010).

Georgia has adopted the Eleventh Circuit three-prong test to determine the admissibility of evidence of other crimes and acts under OCGA § 24-4-404 (b):

> (1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by undue prejudice; (3) the government must offer sufficient proof so that the jury could find that defendant committed the act.

(Citation, punctuation, and footnote omitted.) *Bradshaw v. State*, 296 Ga. 650, 656 (3) (769 SE2d 892) (2015). A trial court's decision on whether to admit evidence under OCGA § 24-4-404 (b) and OCGA § 24-4-403 is reviewed for a "clear abuse of discretion." Id.

(a) Prong one: The trial court allowed the State to introduce evidence of two other acts for the limited purpose of showing Johnson's "intent to . . . use a firearm." "A culpable state of mind—intent or criminal negligence—is an essential element of every crime." (Citation omitted.) *Olds v. State*, 299 Ga. 65, 72 (2) (786 SE2d 633) (2016).

In both of the other acts, Johnson was alleged to have used a gun in an offensive manner against others. The March 2013 incident where Johnson allegedly pointed a gun at two women who were driving a vehicle, an act which could be considered an aggravated assault, and the August 2014 incident where Johnson

8

demanded money from a woman while pointing a gun at her, an act which could be considered an armed robbery, both involve the same intent as required to prove crimes Johnson was charged with in this case. Thus, the other acts were "relevant" and satisfy the first prong for the admission of such evidence. See *Graham v. State*, 337 Ga. App. 664, 669 (2) (788 SE2d 555) (2016); see also *Olds*, 299 Ga at 72 (2); *Bradshaw v. State*, 296 Ga. 650, 656-657 (3) (769 SE2d 892) (2015).

(b) Prong two: The trial court found that the probative value of the other acts evidence was not substantially outweighed by undue prejudice. We agree.

"Rule 403 is an extraordinary remedy that must be used sparingly because it results in the exclusion of concededly probative evidence. Even in close cases, the balance is struck in favor of admissibility in determining whether its probative value is outweighed by the danger of unfair prejudice." (Citations and punctuation omitted.) *Wilson v. State*, 336 Ga. App. 60, 63 (2) (b) (783 SE2d 662) (2016).

"When the fact for which the evidence is offered is undisputed or not reasonably susceptible of dispute, the less the probative value of the evidence." (Citation omitted.) *Olds*, 299 Ga. at 76 (2). "The more strongly an issue is contested, the greater the justification for admitting other act evidence bearing on the point." (Footnote omitted.) Id., citing Mueller & Kilpatrick, Evidence § 4.21 (1995). The

9

principal issue in this case was Johnson's intent to use a firearm in an offensive manner against others. In his opening statement to the jury, Johnson's trial counsel stated that, "Johnson robbed a bank . . . He is guilty of robbing that bank, but he's not guilty of armed robbery. He didn't use a gun in the robbery and he did not show a gun to [the victim]." Johnson's trial counsel centered his entire defense upon the State's inability to prove that Johnson was armed when he committed the robbery. Approximately 15 to 20 surveillance photographs were taken of Johnson inside the bank and a gun was not visible in any of the photographs. Additionally, the victim's and the other witness to the robbery's descriptions of the gun did not match the gun that was ultimately recovered from the vehicle Johnson was driving. Accordingly, the other acts evidence was probative of the issue of Johnson's intent and given the circumstances of this case, '[t]he trial court did not abuse his discretion in balancing the other act[s'] probative value against its prejudicial effect." (Citation omitted.) *Wilson*, 336 Ga. App. at 63 (2) (b).

(c) Prong three: At trial, the victims of the other acts identified Johnson as the perpetrator of the crimes committed against them. Furthermore, the victim of the August 2014 incident identified Johnson in a photographic line-up. "This evidence was sufficient for the jury to find by a preponderance of the evidence that the other

10

act was committed, thereby satisfying the third prong required for the admission of the other act evidence under Rule 404(b)." (Citation omitted.) *Wilson*, 336 Ga. App. at 63 (2) (c).

3. Johnson contends that the trial court abused its discretion when it did not excuse an entire panel of potential jurors after an issue with one potential juror during voir dire. Specifically, following the trial court's reading of the indictment to the potential jurors, one potential juror stated that he had "heard enough to convince [him.]" The juror then asked the trial court if there was an eyewitness in the case. As the trial court attempted to respond that the potential juror did not yet know the evidence, the potential juror interrupted and stated, "[w]ell, if people saw [Johnson] do it . . . I couldn't be impartial in this." Trial counsel for Johnson stated that he had no questions for the potential juror and the trial court excused him. However, after the trial court stated that the potential juror was excused, the State attempted to rehabilitate him. Throughout the dialogue between the State and the potential juror, the potential juror speculated as to what the evidence would be based upon the reading of the indictment. The potential juror stated that if the evidence showed that there were witnesses to Johnson's alleged crimes and if he was on camera then he was guilty. At one point the trial court stopped the questioning of the potential juror and

11

stated, "Okay. I think that's enough. I don't think . . . you're not impartial, are you?" The potential juror responded, "No" and the trial court excused the juror.

> In determining whether a trial court is required to excuse a jury panel for remarks made during voir dire, the inquiry is whether the remarks were *inherently* prejudicial and deprived [Johnson] of his right to begin his trial with a jury free from even a suspicion of prejudgment or fixed opinion. If so, then the trial court's failure to excuse the panel constitutes an abuse of discretion.

(Punctuation and footnotes omitted). *Williams v. State*, 248 Ga. App. 111,112 (1) (545 SE2d 669) (2001). "Generally, dismissal of a jury panel is required when, during voir dire, a prospective juror relays information that is specific to the defendant and germane to the case for which the defendant is on trial. Dismissal is not required, however, when the statements establish only gossamer possibilities of prejudice." (Punctuation and footnotes omitted.) Id.

In this case, the statements made by the potential juror were not inherently prejudicial. The potential juror did not relay any harmful information about Johnson, he only speculated as to what the evidence might show based upon the indictment while being reminded repeatedly by both the trial court and the State that he did not, in fact, actually know what the evidence would show. Accordingly, the potential

12

juror's statements provided no ground for disqualifying the entire panel of potential jurors. See *Williams*, 248 Ga. App. at 112 (1); see also *Jordan v. State*, 218 Ga. App. 679, 680 (1) (462 SE2d 801) (1995).

Additionally, after excusing the potential juror for the second time, the trial court asked the remaining potential jurors if they were still perfectly impartial between the State and Johnson and no one indicated otherwise. Accordingly, the trial court did not abuse its discretion in failing to replace the entire panel of jurors. See *Jordan*, 218 Ga. App. at 680 (1); see also *Cotton v. State*, 279 Ga. 358, 360 (4) (613 SE2d 628) (2005).

4. Johnson contends that he received ineffective assistance of counsel. Specifically, he argues that his trial counsel was ineffective for failing to move for a mistrial after the potential juror's remarks that are detailed in Division 3.

To prevail on an ineffective assistance of counsel claim, Johnson must prove that his trial counsel's performance was deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). "A motion for mistrial is not the proper procedural tool when an allegedly prejudicial comment is made during voir dire of prospective jurors." (Citation omitted.) *Cotton*, 279 Ga. at 360 (4). See *Sharpe v. State*, 272 Ga.

13

684, 687 (5) (531 SE2d 84) (2000) ("The time for making a motion for mistrial is not ripe until the case has begun, and the trial does not begin until the jury has been impaneled and sworn.") (Citation and punctuation omitted.) "[T]he failure to make a meritless motion or objection does not provide a basis upon which to find ineffective assistance of counsel." (Citation omitted.) *Hampton v. State*, 295 Ga. 665, 670 (2) (763 SE2d 467) (2014).

Johnson also argues that his trial counsel was ineffective for failing "to move for a new panel or object to the curative instruction and move for a new panel." However, as discussed in Division 3, it was not erroneous to continue voir dire with the same panel of jurors. Accordingly, any motion for a new panel would have been meritless and thus not a basis upon which to find ineffective assistance of counsel. See *Hampton*, 295 Ga. at 670 (2). Thus, this claim is without merit. Johnson has failed to show any error warranting a new trial.

*Judgment affirmed. Barnes, P. J., and Self, J., concur.*