**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 24, 2018**

# In the Court of Appeals of Georgia

A18A0829. ARRINGTON v. THE STATE.

RAY, Judge.

After a jury trial, James Arrington was convicted of armed robbery, aggravated assault, kidnapping with bodily injury, and possession of a firearm by a convicted felon. On appeal, he argues that the trial court erred by admitting other acts evidence. We affirm the conviction.

Viewed in the light most favorable to the jury's verdict, the evidence showed that Atlanta Cash Solutions is an independent automatic teller machine ("ATM") business that provides ATMs to bars, clubs, football games, festivals, and other events. Atlanta Cash Solutions makes money from surcharges paid by users of the ATMs.

The night before an event, Jay Henderson, the owner of Atlanta Cash Solutions, packs small lock boxes or cassettes with cash. The cassettes are then installed into the ATMs at the events. Henderson's employees transport the ATMs in a trailer pulled by an unmarked van with the cash-filled cassettes inside the van. The cassettes are secured with braided, steel cable and padlocks. The employees set up the ATMs at the events and install the cash-filled cassettes.

At the time of the robbery, Henderson had three employees, Ali Babar, whom he had known since they were children, Steven Borders, a long-time friend, and Reggie Huffman, whom he had known a year. Appellant Arrington is Huffman's nephew. When Huffman started working for the company, the business began experiencing robberies. From March 2012, when Huffman was hired, until the time of this incident, three robberies had occurred.

On November 3, 2012, the day of the robbery at issue in this case, Henderson had two or three events scheduled. Huffman and Babar were working that day. The employees left at about 6:00 a.m., while it was still dark, with the ATMs and the cash-filled cassettes, which were to be inserted into the ATMs at the event site. Huffman was driving the van and trailer, and Babar was in the passenger seat.

Once Huffman and Babar had exited the subdivision, a man walked into the street in front of the van holding a gun. When Huffman stopped the van, a second man approached the passenger window and showed Babar what he thought was a gun. The men opened the van doors and demanded Huffman's and Babar's phones. They forced Babar into the back of the van and ordered Huffman to drive. They kept threatening to shoot Huffman and Babar. The men eventually let Babar and Huffman out of the van, and then drove off.

Babar and Huffman then went to a nearby McDonald's restaurant and called the police. When they exited the restaurant, they saw that the van and trailer were in the parking lot. The cassettes, filled with $128,000 in cash, had been taken.

The police took the van for investigation. When Henderson got the van back, Borders, the third employee, began cleaning the van and found a cell phone under the passenger seat. The phone was Arrington's and had an area code associated with Montgomery, Alabama, where Arrington lived with his mother and another uncle.

Huffman claimed that he had borrowed the phone from Arrington, even though his phone was working. When a detective with the Cobb County Police Department interviewed Huffman the day of the robbery, Huffman had not mentioned a second phone; he said only that the robbers took his phone. When the detective interviewed

3

Huffman again after the phone had been found in the van, Huffman said that he had borrowed the phone because he was unable to get reception in Montgomery, where he had gone the night before the robbery to see Arrington. Huffman told Babar he had borrowed the phone because his phone was dead. However, Arrington told the detective that he had been in the van at an earlier time and that he had left his phone in the van, not that Huffman had borrowed it.

Cell phone tracking records showed Arrington's phone traveling from Montgomery eastbound on I-85 five hours before the armed robbery and then making three calls between 6:00 a.m. and 6:12 a.m., within minutes of the robbery, less than a mile from the crime scene.

During his interview of Arrington, the detective mentioned deoxyribonucleic acid ("DNA") evidence, although the police had not actually recovered any of Arrington's DNA, and also mentioned items that officers had retrieved from the van, from the area near the crime scene, and from the McDonald's parking lot. Arrington volunteered that he had borrowed Huffman's knit cap — even though the detective had not mentioned that they had found a knit cap behind the dumpster at the McDonald's.

4

Arrington's mother and the uncle who lived with them both told the detective that Arrington had gone to Atlanta in November 2012. The uncle added that the purpose of the trip was to do a job with Huffman.

At issue is the trial court's decision to allow the state to introduce evidence of Arrington's two 1989 Alabama convictions for robbery in the first degree. Alabama Code § 13A-8-41 defines robbery in the first degree in pertinent part as threatening "the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property" while "armed with a deadly weapon or dangerous instrument" or while possessing "an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon. . . ."

The jury found Arrington guilty of armed robbery, two counts of aggravated assault, kidnapping with bodily injury, and possession of a firearm by a convicted felon. Arrington moved for a new trial, which the trial court denied. This appeal enused.

In his sole enumeration on appeal, Arrington argues that the trial court erred in admitting evidence of his 1989 convictions for armed robbery. We disagree.

When we evaluate the admission of other acts evidence,

we start with the proposition that OCGA § 24-4-404 (b) ("Rule 404 (b)") is, on its face, an evidentiary rule of inclusion which contains a non-exhaustive list of purposes other than bad character for which other acts evidence is deemed relevant and may be properly offered into evidence. Despite its inclusive nature, Rule 404 (b) prohibits the admission of such evidence when it is offered solely for the impermissible purpose of showing a defendant's bad character or propensity to commit a crime. Consequently, we use a three-part test to determine if evidence of other uncharged acts is admissible. Our threshold inquiry is whether the evidence is probative of a material issue other than character. Common examples include motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. OCGA § 24-4-404 (b). Second, the evidence must meet the requirements of OCGA § 24-4-403 ("Rule 403") — its probative value must not be substantially outweighed by its undue prejudice. And, third, the [s]tate must offer sufficient proof that the defendant committed the act.

*Thompson v. State*, 302 Ga. 533, 539-540 (III) (A) (807 SE2d 899) (2017) (citation and punctuation omitted).

The trial court held that the other acts evidence was relevant to an issue other than Arrington's character and was properly admitted for the limited purposes of establishing his intent, motive, opportunity, knowledge, and preparation. It also found

6

"that the State's need for this evidence to prove its circumstantial case that [Arrington] was one of the robbers and to negate the defense that [Arrington] did not commit the robbery outweighed any possible prejudice by its admission." Arrington asserts that the State failed to show that the other acts evidence was relevant to the issues of motive, opportunity, knowledge, and preparation, or that the probative value outweighed the undue prejudice. However, he concedes that the evidence was relevant to the issue of intent. Arrington does not argue that the State failed to offer sufficient proof that he committed the other acts.

With regard to the element of intent, the trial court found that the other acts involved the same mental state as the charged offense and thus were "were relevant to show [Arrington's] intent to commit a similar offense of robbing someone of their cash by use of a handgun."

"Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses. Thus, where the state of mind required for the charged and extrinsic offenses is the same, the first prong of the Rule 404 (b) test is satisfied." *Bradshaw v. State*, 296 Ga. 650 (656-657) (3) (769 SE2d 892) (2015) (citation omitted). "A culpable state of mind — intent or criminal negligence — is an essential

element of every crime. In both of the other acts, [Arrington] was alleged to have used a gun [or an apparent gun to rob] others."*Johnson v. State*, 340 Ga. App. 429, 433 (2) (a) (797 SE2d 666) (2017) (citation and punctuation omitted). In one of the other acts, Arrington was convicted of robbery in the first degree for using a handgun to rob a woman at a convenience store of $422. In the second act, Arrington was convicted of robbery in the first degree for pretending to have a handgun and robbing a cashier at a Burger King restaurant of $40.

Under OCGA § 16-8-41 (a), "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." As noted above, Arrington's other acts involved the use of a weapon or an apparent weapon "with intent to compel acquiescence to the taking of or escaping with . . . property." Ala. Code § 13A-8-41.

Consequently, "both [of the other acts] involve the same intent as required to prove crimes [Arrington] was charged with in this case. Thus, the other acts were 'relevant' and satisfy the first prong for the admission of such evidence." *Johnson*, 240 Ga. App. at 433 (2) (a) (citations omitted). Moreover, Arrington concedes that

8

the other acts were relevant to show intent, which is one of the purposes for which other acts may properly offered into evidence under OCGA § 24-4-404 (b).

Furthermore, the probative value of the evidence of Arrington's prior convictions was not substantially outweighed by any undue prejudicial impact, because there was physical evidence of Arrington's presence at the scene of the crimes, indicating his involvement. Thus, the State's need for the evidence of his prior convictions to prove its circumstantial case that Arrington participated in the crimes and to negate his defense that he was not a participant was more probative than prejudicial. See e.g. *United States v. Durham*, 554 Fed. Appx. 901, 902-904 (I), (II) (11th Cir. 2014) (where defendant asserted he was not the perpetrator of a robbery, evidence of his attempt to commit another robbery was properly admitted under Rule 404 (b) for the purpose of showing intent). In making this assessment, "we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Anglin v. State*, 302 Ga. 333 (3) (806 SE2d 573) (2017). Lastly, we must be mindful that a trial court's decision to admit evidence pursuant to OCGA § 24-4-404 (b) is reviewed for a clear abuse of discretion. (Citation omitted.) *Brown v. State*, 303 Ga. 158, 161 (2) (810 SE2d 145) (2018).

As the trial court did not clearly abuse its discretion in admitting Arrington's prior convictions for the purposes of establishing his intent in this case, we conclude that the evidence was properly admitted into evidence. In so holding, we need not address whether the other acts were also admissible for the purpose of showing motive, opportunity, preparation, or knowledge.

*Judgment affirmed. Rickman, J., concurs. McFadden, P. J., dissents.* **\***

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. SEE COURT OF APPEALS RULE 33.2**

A18A0829. ARRINGTON v. THE STATE.

McFADDEN, Presiding Judge, dissenting.

I respectfully dissent. The trial court erred in admitting evidence of Arrington's 1989 first degree robbery convictions because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. And the error was not harmless because the case against Arrington was entirely circumstantial. So I would reverse.

As the majority holds (and Arrington concedes), the other acts were relevant to show intent. See OCGA § 24-4-404 (b). So the issue is whether such evidence "should have been excluded under OCGA § 24-4-403 ("Rule 403"), which provides

for the exclusion of relevant evidence if, among other things, 'its probative value is substantially outweighed by the danger of unfair prejudice.'" *Whaley v. State*, 343 Ga. App. 701, 707-708 (3) (a) (ii) (808 SE2d 88) (2017). When we make this assessment, "we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Anglin v. State*, 302 Ga. 333 (3) (806 SE2d 573) (2017) (citation omitted). We "make a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *Brown v. State*, 303 Ga. 158, 161 (2) (810 SE2d 145) (2018) (citations and punctuation omitted). "Probative value also depends on the marginal worth of the evidence — how much it adds, in other words, to the other proof available to establish the fact for which it is offered. The stronger the other proof, the less the marginal value of the evidence in question. And probative value depends as well upon the need for the evidence." *Jones v. State*, 301 Ga. 544, 547 (1) (802 SE2d 234) (2017) (citation and punctuation omitted). "When the fact for which the evidence is offered is undisputed or not reasonably susceptible of dispute, the less the probative value of the evidence." *Brown,* 303 Ga. at 162 (2) (citation and

2

punctuation omitted). We review the trial court's decision for a clear abuse of discretion. Id.

"The classic situations calling for admissibility of independent crimes or acts to prove intent are when the defendant admits a certain involvement in the criminal incident but maintains he was duped or forced to go along and thus lacked the necessary criminal intent or the defendant admits the charged conduct but claims he did not intend to act criminally." Milich, Georgia Rules of Evidence § 11:13 (2017-2018) (footnote omitted). This case does not present such a situation. Although intent was in issue given Arrington's plea of not guilty, see *Bradshaw v. State*, 296 Ga. 650, 656 (3) (769 SE2d 892) (2015), the intent of the perpetrators of these crimes was not reasonably susceptible of dispute; Arrington did not claim that the perpetrators did not intend to commit the crimes or that the crimes resulted from an accident or mistake. Rather, Arrington contended that he was not one of the perpetrators. So the state's need to introduce the other acts evidence to prove intent was minimal.

And the other acts occurred more than 23 years before the instant crimes. Unlike the other acts, the crimes here required inside knowledge of how the business operated and coordination between two or more people. The only similarities between

the instant crimes and the other acts were the use of a gun to take money. The other acts were temporally remote and they were not factually similar.

The other acts "were not relevant to the ultimate issue in the case — i.e., [who committed the crimes]. Instead, the other acts evidence primarily established one thing — [Arrington's] propensity" to commit armed robbery. *Brown*, 303 Ga. at 164 (2). In light of the state's lack of need, the temporal remoteness, and the lack of similarity, "the probative value of the other acts evidence was extremely low at best," *Brown*, 303 Ga. at 162 (2), and the trial court erred by admitting the 1989 convictions as Rule 404 (b) evidence to show Arrington's intent. Compare *Logan-Goodlaw v. State*, 331 Ga. App. 671, 675 (2) (770 SE2d 899) (2015) (physical precedent only) (defendant's theory that he was present during underlying armed robbery but did not participate in robbing victim squarely challenged issue of his intent, making the admission of a prior armed robbery relevant under Rule 404 (b)).

Because the admission of the 404 (b) evidence was erroneous,

> we must review the record de novo to determine whether the trial court's error was harmless. The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict. In doing so, we weigh the evidence as we would expect reasonable jurors to have done so, as opposed to assuming that they took the most pro-guilt possible view of every bit of evidence in the case.

4

*Brown*, 303 Ga. at 164 (2) (citations and punctuation omitted).

Here, the evidence of Arrington's guilt is not overwhelming. As the trial court noted, the case against Arrington was entirely circumstantial. No eyewitness identified Arrington as a perpetrator. The only physical evidence linking Arrington to the crime was the presence of his cell phone in the van. "In light of the entirety of the evidence presented at trial, we cannot say that it is highly probable that the error did not contribute to the verdict. Accordingly, we [should] reverse [Arrington's] convictions." *Brown*, 303 Ga. at 165 (2).