**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**December 27, 2021**

# In the Court of Appeals of Georgia

A21A1661. CEDILLO v. THE STATE.

RICKMAN, Chief Judge.

Following a jury trial, Jose Cedillo was convicted on one count of aggravated sexual battery, one count of aggravated child molestation, one count of rape, two counts of child molestation, and one count of false imprisonment. Cedillo's motion for new trial was denied and he appeals, enumerating, inter alia, twelve instances of ineffective assistance of trial counsel and four evidentiary issues. For the following reasons, we remand this case to the trial court with direction.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the defendant guilty of the crimes

beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

(Citation and punctuation omitted.) *Johnson v. State*, 340 Ga. App. 429, 430 (797 SE2d 666) (2017).

So viewed, the evidence showed that Cedillo was the victim's cousin and worked with her parents at their restaurant. Cedillo would occasionally spend the night at the victim's home. When the victim was in eighth grade, she revealed to her friend that beginning when she was eight years old, a cousin had molested her. The victim told another friend that she had been molested and raped.

After the victim's mother learned of the victim's disclosure, she asked the victim about the allegations and the victim told her mother that Cedillo had touched her inappropriately a long time ago, when she was eight or nine years old. The victim was interviewed twice by a forensic interviewer. In the first interview, the victim disclosed that Cedillo touched her breast and her vagina and that the abuse began when she was around nine years old. In the second interview, the victim revealed that she had been raped, but she failed to identify who raped her. The victim underwent a sexual assault examination and informed the nurse that she had been molested by

a close family member when she was nine years old and that the same offender later raped her.

The victim testified that everything she told the forensic interviewer and the sexual assault nurse was truthful and that Cedillo was the perpetrator of both the abuse that happened when she was nine years old and the rape that happened when she was in eighth grade. The victim's father testified that when he confronted Cedillo about the abuse allegations, Cedillo responded that, "it wasn't that bad." The victim's uncle testified that when he spoke to Cedillo, Cedillo denied the allegations, but added that he did once massage the victim.

At the close of the victim's mother's testimony, she was asked to read aloud a purported suicide letter written by the victim that she had never seen before. The suicide letter read,

> Suicide letter. Dear mom, you are the best person to me. I can't live with myself no more. I am heart broken. I can't breathe. I don't want to breathe. I want to float into heaven and be with God and for all my pains to go away. I just want to die. I want a bullet through my head. I want to die, and [friend], I want him at my funeral for sure. I love the kid. He helped me through everything. Dad [and siblings], I love you and I'm sorry. I'm too deep in and no one can save me from this hell I am in. I am too depressed and scarred from him. My molester, he left me suicidal scars and dead. Nothing is even bringing me joy. I've served my purpose

3

here. Please understand that I wasn't myself in the end and I'm not even [myself] anymore. I'm too damaged to go on. There's nothing you could have done.

A grand jury returned an indictment charging Cedillo with one count of aggravated sexual battery, one count of aggravated child molestation, one count of rape, three counts of child molestation, two counts of sexual battery against a child under 16, and one count of false imprisonment. Cedillo was found guilty on all counts with the exception of one count of sexual battery which was dismissed. Additionally, his convictions for the other count of sexual battery and one count of child molestation merged with his convictions for child molestation and aggravated child molestation respectively.

Cedillo filed a timely motion for new trial in which he asserted numerous claims of error, including 12 separate instances of ineffective assistance of trial counsel and several evidentiary errors. Specifically, Cedillo claimed that his trial counsel was ineffective for failing to: object to victim impact evidence during the State's opening statement; object to the forensic interviewers testimony suggesting the victim engaged in a behavior indicative of self-mutilation; object to the forensic interviewer's testimony regarding the victim's truthfulness; object to the victim's

4

mother's testimony about the victim's depression and potential causes of it; object to the victim's mother's testimony regarding Cedillo's future dangerousness; object to victim impact evidence regarding the victim's self-harm; object to the suicide note; object to victim impact testimony from the victim's father; object to the victim's uncle's testimony regarding whether Cedillo seemed guilty when he admitted to massaging the victim; object to testimony that Cedillo never denied the allegations; request a hearing and/or object when the trial court cleared the courtroom for the victim's testimony; and object when the State elicited testimony regarding Cedillo's past dating history, particularly the age difference between him and his high school girlfriend.

At the hearing on Cedillo's motion for new trial, both of his trial attorneys testified. One of Cedillo's trial attorneys testified that he should have objected to the victim impact evidence during the State's opening statement and that his failure to object to some of the forensic interviewer's testimony "woke [him] up in the middle of the night," When asked about the victim's mother's reading of the suicide note, one of his attorneys testified that

> [t]hat was . . . a home run part of the trial you hit there [referring to the prosecutor]. I mean, I thought it was . . . objectionable the way that went

down. It was very moving for the mom of the victim to read a suicide notice in Court of her daughter. I think it struck home with the jury. I don't agree with that type of witness handling. I think we should have objected to it. It was quite shocking. It was not extremely probative of the facts of issue in the case. It was extremely prejudicial, and he did the same thing with the dad. . . . We should have objected. It was shocking in the moment, and we didn't.

His other attorney testified regarding the victim impact evidence that,

there's a couple of paragraphs here [referring to the trial transcript] where I missed all of this victim impact stuff. Fairly regularly, I did a good job of missing it, and it could be that I just wasn't up on the law at the time for this particular thing, or maybe I missed this one and that one and the one before all about the same basic concept . . . I just didn't do it.

In its order denying Cedillo's motion for new trial, the trial court essentially pretermitted the question of whether trial counsel performed deficiently, stating that it, "has reviewed the specifics of the claims of ineffective assistance of counsel and finds that counsel was not ineffective, and even assuming counsel was ineffective, it did not affect the outcome of this case."

Cedillo contends that he received ineffective assistance of counsel in 12 different respects and also asserts cumulative prejudice. "To prevail on his claims of

6

ineffective assistance, [Cedillo] must prove both that the performance of his lawyers was professionally deficient and that he was prejudiced by this deficient performance." *Woods v. State*, ___ Ga. ___ (III) (1) (862 SE2d 526) (2021). "To prove deficient performance, [Cedillo] must show that his attorneys performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." (Citation and punctuation omitted.) Id. "This requires that he overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct." (Citation and punctuation omitted.) Id. "And to prove prejudice, [Cedillo] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Citation and punctuation omitted.) Id.

"Ordinarily, failure to satisfy either prong of the *Strickland* test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong." (Citation and punctuation omitted.) *Woods* ___ Ga. at ___ (III) (I). "However, this Court must also consider that 'prejudice' is assessed based on the cumulative effect of all of trial counsel's deficiencies." (Citation and punctuation omitted.) Id. "It is the prejudice arising from counsel's errors that is

7

constitutionally relevant, not that each individual error by counsel should be considered in a vacuum." (Citation and punctuation omitted.) Id. Additionally, when evidentiary errors are also asserted, "Georgia courts considering whether a criminal defendant is entitled to a new trial should consider collectively the prejudicial effect of [any] trial court errors and any deficient performance by counsel — at least where those errors by the court and counsel involve evidentiary issues." *State v. Lane*, 308 Ga. 10, 14 (1) (838 SE2d 808) (2020).

Here, the trial court explained that even assuming Cedillo's trial counsel performed deficiently, the deficient performance did not affect the outcome of the case. The trial court did not analyze the cumulative prejudice of Cedillo's trial counsel's deficiencies.[1] Additionally, in Cedillo's amended motion for new trial, he alleges evidentiary errors which the trial court does not address in its order denying his motion for new trial.

---

[1]We note that this entire case rested upon the credibility of the victim. Cedillo alleged twelve instances of ineffective assistance of counsel. The trial court held that even if Cedillo's trial counsel performed deficiently in each way Cedillo enumerated, the outcome of the trial was not affected. While expressing no opinion as to the correct result on remand, it is difficult to understand how twelve instances of deficient trial counsel performance would have no impact on the outcome of the trial.

The trial court's lack of findings as to credibility and factual findings in regards to the ineffective assistance claims and lack of analysis on the alleged evidentiary issues affect our ability to conduct a full analysis. It was the job of the trial court to review each alleged instance of deficient performance and where deficient performance was found, to consider the cumulative prejudice from all such deficiencies. The trial court was also required to address each claim of evidentiary error and if the trial court found an evidentiary error, to consider the cumulative prejudicial effect of that error and any deficient performance of counsel. See *Lane,* 308 Ga. at 14 (1), 21 (4). Accordingly, we vacate the trial court's order denying Cedillo's motion for new trial and remand for proceedings consistent with this opinion. See *Woods*, ___ Ga. at ___; *Debelbot v. State*, 305 Ga. 534, 544 (2) (826 SE2d 129) (2019).

*Judgment vacated and case remanded with direction. McFadden, C. J., and Senior Appellate Judge Herbert E. Phipps concur*.