S96A0325. JOHNSON v. THE STATE.
S96A0326. HARRIS v. THE STATE.
(470 SE2d 637)

BENHAM, Chief Justice.

Appellants Ian Dwight Harris and Demond Shalane Johnson were each convicted of malice murder and armed robbery, and were sentenced to life imprisonment.[1]

1. We conclude that the evidence was sufficient to enable a rational trier of fact to find appellants guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The evidence presented at trial indicated that the victim, Dr. Cesar Garcia, his wife, and their two children, were traveling from New York to Mexico when they stopped at an Atlanta hotel. Dr. Garcia and family, after getting settled at the hotel, went to dinner. When Dr. Garcia and his family returned from dinner and pulled into the parking lot of the hotel, the car in which Johnson and Harris were riding pulled up to the Garcias' vehicle. Johnson approached Mrs. Garcia, who was standing in the parking lot, pointed a gun in her face, and demanded money. She offered Johnson her purse which he did not take. Instead, Johnson entered the Garcias' vehicle via the passenger's side, exited the driver's side, approached Dr. Garcia, and demanded money. Mrs. Garcia heard her husband say, "Okay, man, okay, man, no man," and then heard a gunshot. Johnson ran to a waiting car where Harris sat in the driver's seat and they sped off. A truck driver, hearing the gunshot, ran over to the parking

---

[1] The crimes were committed on July 17, 1994. Johnson and Harris were indicted in January 1995, and a jury trial commenced on May 8, 1995. On May 11, 1995, the jury convicted Johnson and Harris of malice murder, felony murder and armed robbery. On that same day, the trial court sentenced Johnson to two consecutive life sentences and Harris to two concurrent life sentences on the malice murder and armed robbery counts, the felony murder verdict being vacated by operation of law under OCGA § 16-1-7. Johnson filed a motion for new trial on June 2, 1995, and Harris filed a motion for new trial on June 6, 1995. The trial court denied both motions on August 30, 1995. Johnson filed a notice of appeal on September 21, 1995, and Harris filed a notice of appeal on September 28, 1995. Both cases docketed in this Court on November 21, 1995, and submitted for decision on briefs.

lot where he saw the victim lying face down on the ground clutching money in his hand, dead from a single gunshot wound to the head. Two witnesses told police officials that Johnson and Harris had confessed to committing the crime, and the police subsequently found Johnson's fingerprints in the Garcias' vehicle.

*Case No. S96A0325*

2. Johnson contends that the trial court erred in not granting his motion to suppress fingerprint evidence. Johnson filed his motion to suppress six days prior to trial, which the trial court denied, finding, inter alia, that it was untimely. Because Johnson's motion to suppress was not filed by the time of arraignment, it was untimely. Although the trial court should have dismissed the motion for untimeliness rather than denying it, we conclude that the trial court properly ruled adversely to the motion. *Van Huynh v. State*, 258 Ga. 663 (2) (373 SE2d 502) (1988).

3. During the trial, the State sought to introduce and elicit testimony from an employee of U-Haul concerning the physical location and travels of the vehicle that the Garcias rented. The State called an employee of the vehicle rental agency who used the company's computer-generated records to answer questions. The employee testified that he is the custodian of the records, that he maintained the records in the regular course of business, and that the information in the documents was recorded at the time of the actual rental. *Suarez v. Suarez*, 257 Ga. 102 (355 SE2d 649) (1987). After reviewing the record in this case, we determine that the State laid a proper foundation for admission of the records under the business records exception to the hearsay rule, OCGA § 24-3-14. We also hold that because the employee had personal knowledge of information contained in the records, he was authorized to answer questions and explain aspects of the records. Compare *Hall v. State*, 244 Ga. 86 (4) (259 SE2d 41) (1979).

4. Johnson finally contends that, in violation of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), the manner in which the State exercised peremptory challenges against black venirepersons gave rise to an inference of racial discrimination that was not successfully rebutted by the State. Johnson argues that the State struck four black potential jurors for whimsical or fanciful reasons: a black female (Juror No. 13) because her son had been convicted of a crime and she did not believe that her son had been given a "fair deal"; another black female (Juror No. 16) because she was making facial expressions and because she was a postal worker, and postal workers, in the prosecutor's experience, do not make good jurors; a black male because of a lack of sufficient educational or work

background (Juror No. 24); and another black male because he appeared to have rather an eccentric personality (Juror No. 27). The trial court denied Johnson's *Batson* motion, finding that the reasons given by the State were race-neutral.

We review the trial court's denial of the *Batson* motion under a clearly erroneous standard. *Minor v. State*, 264 Ga. 195 (442 SE2d 754) (1994). We find that the State's reason for striking Juror No. 13 was race-neutral, and the trial court's decision to allow the strike is further evidenced by the fact that the State struck a white male potential juror for the same reason. See *Lingo v. State*, 263 Ga. 664, 668 (437 SE2d 463) (1993). We also find that the trial court's decision to allow the State to use a peremptory strike against potential Juror No. 16 was not clearly erroneous and supported under *Minor v. State*, 264 Ga. 195, supra (this Court upheld the prosecutor's strike of a nightclub singer based upon his opinion that the job was indicative of a "free spirit" and did not show a lot of dedication to the community). We further find that, giving the trial court great deference (see *Lingo*, 263 Ga. at 669), there was no error in denying Johnson's motion based upon the State's use of peremptory strikes against Juror Nos. 24 and 27.

### Case No. S96A0326

5. Harris contends that the trial court erred in refusing to suppress a custodial statement which he claims was made in response to being shown a picture of the victim but was prior to being informed of his *Miranda* rights. Harris, who was already in police custody on an unrelated charge, was brought to the interview room for questioning. After being shown the picture, Harris stated, "I guess I know why I'm here now. I didn't shoot that man. I never got out of the car." We hold that the trial court properly concluded that the statement was voluntary. The testimony of the police officers at the hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), indicated that prior to being read his *Miranda* rights, Harris was questioned routinely about matters unrelated to the Garcia murder and was shown a picture of co-defendant Johnson, not the victim, at which time his incriminating statements were volunteered. Even assuming the trial court erred, we find such error harmless in this case because Harris made other incriminating statements after receiving the *Miranda* warnings which did not contradict but supported the pre-*Miranda* statement. The officers' testimony also indicated that Harris did not appear to be under the influence of alcohol or drugs; Harris stated that he wanted to talk to the interrogators; and he initially stated that he understood the *Miranda* warnings "to an extent," but when questioned as to what he did not understand, stated that he

did understand. Harris' testimony at the hearing did not refute these facts, and under these circumstances, we conclude that the trial court's determination that the statement was voluntarily entered was not in error. *Swinney v. State*, 217 Ga. App. 657 (458 SE2d 686) (1995).

6. The trial court permitted testimony concerning an unindicted similar transaction which occurred at the same location two weeks prior to the Garcia murder. Harris contends that the admission of the testimony was error because the victim of that transaction did not identify Harris as the perpetrator until some 297 days after the transaction occurred. The time which elapsed between the commission of the extrinsic offense and the identification by the victim does not affect the admissibility of the evidence, but only its weight. *Snow v. State*, 213 Ga. App. 571, 573 (445 SE2d 353) (1994).

7. Harris contends that the trial court erred in allowing the testimony of two State witnesses who testified that Harris and Johnson came to one of the witness's apartment shortly after the crime was committed. Harris contends that these witnesses were wholly incredible since they did not share this information with the police until two months after the murder and were motivated to lie by the reward money and the police's willingness to negotiate their pending charges. However, this Court does not determine the credibility of witnesses, and will not disturb the trial court's admittance of such testimony unless clearly erroneous. See *Howard v. State*, 261 Ga. 251, 252 (403 SE2d 204) (1991).

8. Citing *Brown v. State*, 250 Ga. 862 (302 SE2d 347) (1983), Harris contends that the trial court erred in admitting gruesome and highly prejudicial photographs of the victim. We hold, however, that the photographs were not subject to *Brown* challenges since each of the photographs depicted the victim prior to autopsy and were used to demonstrate the location and nature of the wounds inflicted by Johnson. *Smith v. State*, 258 Ga. 179 (366 SE2d 687) (1988); *Burger v. State*, 242 Ga. 28 (247 SE2d 834) (1978).

9. Harris finally contends that he was denied effective assistance of counsel. While represented by his trial counsel, who had filed a motion for new trial, Harris filed a pro se motion for new trial in which he alleged that his counsel had not provided effective assistance. Citing Harris' pro se motion, trial counsel filed a motion to withdraw from representation. Instead of granting trial counsel's motion and appointing new counsel to represent Harris, the trial court denied both motions for new trial after addressing them on their merits. Thereafter, the trial court granted trial counsel's motion to withdraw and appointed new counsel to represent Harris. According to both parties' briefs, Harris' new counsel has filed an extraordinary motion for new trial in which he alleged ineffective assistance of trial

counsel, and an evidentiary hearing on the issue is pending before the trial court.

Because Harris does not have the right to be represented by counsel and also to represent himself (*Cargill v. State*, 255 Ga. 616 (3) (340 SE2d 891) (1986)), and Harris' trial counsel cannot be expected to bring a claim of ineffectiveness against himself (see *White v. Kelso*, 261 Ga. 32 (401 SE2d 733) (1991)), we hold that the trial court erred in addressing the merits of Harris' pro se motion for new trial on the issue of ineffectiveness of trial counsel while Harris was still being represented by the trial counsel. Thus, that portion of the judgment is stricken, and the case is remanded for the trial court to consider the allegation of ineffective assistance under the representation of new counsel. A direct appeal from such ruling may be filed as authorized under *Parrish v. State*, 194 Ga. App. 760 (4) (391 SE2d 797) (1990).

*Judgment affirmed in Case No. S96A0325. Judgment affirmed in part, reversed and remanded in part in Case No. S96A0326. All the Justices concur.*

DECIDED MAY 13, 1996 —
RECONSIDERATION DENIED JUNE 14, 1996.

*Robert L. Waller III,* for appellant (case no. S96A0325).
*Paul J. McCord,* for appellant (case no. S96A0326).
*J. Tom Morgan, District Attorney, Jeffrey H. Brickman, Desiree S. Peagler, Assistant District Attorneys, Michael J. Bowers, Attorney General, Caroline W. Donaldson, Assistant Attorney General,* for appellee.