## S05A1679. TAYLOR v. THE STATE.
### (620 SE2d 363)

CARLEY, Justice.

A jury found Timothy Taylor guilty of felony murder of Gerald Carroll during the commission of aggravated assault and of possession of a firearm while committing that felony. The trial court sentenced him to life imprisonment for murder and to a consecutive five-year term for the weapons offense. Taylor's motion for new trial was denied, and he appeals.[1]

1. Claiming that his girlfriend was raped by Carroll, Taylor threatened to kill him. On the day of the homicide, the two had dinner together and then played video games with a number of others. Taylor eventually left the group, but returned with another man. Both were armed with guns. Taylor ordered Carroll and another individual against the wall, and he and the accomplice took their money. Taylor then told the two to get on their knees. He began to point and wave the gun, and it fired. The bullet struck Carroll, who escaped but collapsed nearby. He died as a result of the gunshot.

When construed most strongly in support of the jury's verdicts, the evidence is sufficient to authorize a rational trier of fact to find proof beyond a reasonable doubt of Taylor's guilt of felony murder of Carroll while committing aggravated assault and of possession of a firearm during the commission of that crime. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. On direct examination, a police officer was asked whether he successfully identified "Chip," which was a nickname used by Taylor. The witness replied: "Yes, . . . Based on a police report I located after figuring out that the gentleman that was identified as Chip was involved in an altercation about a week ago." Taylor moved for a mistrial, contending that this testimony impermissibly placed his character in issue. The trial court admonished the officer for the

---

[1] The crimes were committed on August 13, 2002. The grand jury indicted Taylor on July 1, 2003. The jury returned the guilty verdicts on July 10, 2003, and the trial court entered the judgments of conviction and imposed the sentences on July 15, 2003. Taylor filed a motion for new trial on July 28, 2003, which the trial court denied on February 16, 2005. The notice of appeal was filed on March 15, 2003, and the case was docketed in this Court on June 29, 2005. The appeal was submitted for decision on August 22, 2005.

unresponsive portion of his answer, but denied the motion. Taylor enumerates that ruling as error.

A motion for mistrial invokes the discretion of the trial court, the exercise of which will not be disturbed unless abused. *Isaac v. State*, 269 Ga. 875, 877 (3) (505 SE2d 480) (1998). As the trial court noted, the reference to the police report as the source of the officer's discovery of the identity of "Chip" was volunteered rather than elicited, and did not directly implicate Taylor in any specific criminal activity. In such circumstances, we have recognized that the denial of a motion for mistrial is not an abuse of discretion. *Eagle v. State*, 264 Ga. 1, 2 (2) (440 SE2d 2) (1994). That is true even where, as here, the trial court does not give the jury a curative instruction to disregard the gratuitous testimony. *Mitchell v. State*, 275 Ga. 42, 44 (3) (561 SE2d 803) (2002). Therefore, the denial of Taylor's motion for mistrial was not an erroneous abuse of discretion.

3. Taylor urges that his motion based on *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986) was meritorious. To prevail on that motion, he had the burden of proving that the State engaged in purposeful racial discrimination in the exercise of its peremptory strikes and, on appellate review, the trial court's finding that he did not meet that burden is entitled to great deference. *Floyd v. State*, 272 Ga. 65, 68 (3) (525 SE2d 683) (2000).

The record shows that the assistant district attorney used a total of five peremptory strikes, and all were directed at African-Americans. Accordingly, the trial court correctly required an explanation for why he had done so. *Ford v. State*, 262 Ga. 558, 559 (2) (423 SE2d 245) (1992). Compare *Slade v. State*, 267 Ga. 868, 870 (4) (485 SE2d 726) (1997). To overcome a prima facie inference of racial discrimination, the reasons given must be "concrete, tangible, race-neutral and neutrally applied. . . ." *Ford v. State*, supra at 560 (3). However,

> this process does not demand an explanation that is persuasive, or even plausible. . . . "[T]he issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." [Cits.] . . . What [is meant] by a "legitimate reason" is not a reason that makes sense, but a reason that does not deny equal protection. [Cits.]

*Purkett v. Elem*, 514 U. S. 765, 768-769 (115 SC 1769, 131 LE2d 834) (1995). The primary explanation offered here was the limited educational and work experience of the stricken jurors. This is a race-neutral reason. *Johnson v. State*, 266 Ga. 775, 777 (4) (470 SE2d 637)

(1996); *Trice v. State*, 266 Ga. 102, 103 (2) (464 SE2d 205) (1995); *Jones v. State*, 261 Ga. App. 698, 701 (2) (583 SE2d 546) (2003). One of the jurors was also struck because, in addition to her limited education and work history, she seemed odd. Another was unemployed and also demonstrated a lack of seriousness for the judicial process. These also are race-neutral explanations for using the strikes. See *Purkett v. Elem*, supra at 769 (juror stricken "because he had long, unkempt hair, a mustache, and a beard"); *Lingo v. State*, 263 Ga. 664, 667 (1) (b) (5), (8) (437 SE2d 463) (1993); *Jones v. State*, 226 Ga. App. 428, 429 (1) (d) (487 SE2d 62) (1997).

> [W]here, as here, racially-neutral reasons are given, "the ultimate inquiry for the (trial court) is not whether counsel's reason(s are) suspect, or weak, or irrational, but whether counsel is telling the truth in his or her assertion that the challenge is not race-based." [Cit.] . . . "As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.' (Cits.)" [Cit.]

*Smith v. State*, 264 Ga. 449, 454 (4) (448 SE2d 179) (1994). If

> multiple racially-neutral reasons are given for the peremptory strike of [African-American] potential jurors, a *Batson* violation does not exist simply because one or more of those racially-neutral reasons was not used by the prosecutor to strike white potential jurors. [Cits.]

*Smith v. State*, supra at 452 (3). Consistent with the explanations set forth by the assistant district attorney, the record shows that all of the jurors who actually served were college graduates except one, and she was an African-American female who was a student majoring in speech pathology at a major university. Under these circumstances and giving the requisite deference to the trial court's finding of no purposeful racial discrimination, Taylor's *Batson* motion was not erroneously denied.

*Judgments affirmed. All the Justices concur.*

BENHAM, Justice, concurring.

I join the majority's affirmance of appellant's convictions for felony murder and possession of a firearm during the commission of a felony. I also agree with the majority that a party may exercise peremptory challenges to remove prospective jurors based on limited educational and work experience. See *Johnson v. State*, 266 Ga. 775 (4) (470 SE2d 637) (1996); *Trice v. State*, 266 Ga. 102 (2) (464 SE2d

205) (1995). However, I am unwilling to condone the striking of a potential juror because she is described as seeming "odd" or because he "demonstrated a lack of seriousness for the judicial process," without being made aware of the facts from which either conclusion is drawn. Because I recognize that a trial court's decision with regard to challenged peremptory strikes is entitled to great deference by a reviewing court, I urge trial courts faced with "the practical difficulty of ferreting out discrimination in selections discretionary by nature and choices subject to myriad legitimate influences," (*Miller-El v. Dretke*, ___ U. S. ___ (125 SC 2317, 2324, 162 LE2d 196) (2005)), to remember that "the exercise of a peremptory challenge must not be based on either the race of the juror or the racial stereotypes held by the party." *Georgia v. McCollum*, 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992). As the United States Supreme Court recently reminded us in *Miller-El v. Dretke*, supra, 125 SC at 2324, "the very integrity of the courts is jeopardized when a prosecutor's discrimination 'invites cynicism respecting the jury's neutrality' [cit.], and undermines public confidence in adjudication."

DECIDED OCTOBER 3, 2005.

*Patricia A. Chandler*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Marc A. Mallon, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Robin J. Leigh, Assistant Attorney General*, for appellee.