SUPREME COURT OF GEORGIA

March 15, 2023

The Honorable Supreme Court met pursuant to adjournment.

The following order was passed:

It appearing that the attached opinion decides a second-term appeal, which must be concluded by the end of the December Term, it is ordered that a motion for reconsideration, if any, must be **received** in the Supreme Court E-Filing/Docket (SCED) System **by 2:00 p.m. on Wednesday, March 22, 2023.**

**SUPREME COURT OF THE STATE OF GEORGIA**
Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.
Witness my signature and the seal of said court hereto affixed the day and year last above written.

_Therese S Barnes_ , Clerk

NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: March 15, 2023

S22A0964. JOHNSON v. THE STATE.

PINSON, Justice.

Over the past two decades, this Court has applied an absolute rule that anything filed by a criminal defendant on his or her own while still represented by counsel is a "legal nullity." In this case, we asked the parties and amici whether that rule is correct. In other words, is a pro se filing made by a defendant who is actually or presumptively represented by counsel *always* a nullity?

For the reasons set out below, we now answer that question in the negative. Although a defendant does not have a constitutional or statutory right to represent himself while he is also represented by counsel, nothing in our Constitution or Code prohibits such "hybrid representation," either. And courts otherwise have broad discretion to control their processes and the conduct of those

appearing before them. In keeping with these points, a few of our decisions have correctly recognized that courts retain the discretion to allow hybrid representation.

Our decisions adopting and applying the contrary rule are virtually unreasoned. At most, these decisions point out that a defendant does not have a right to hybrid representation—but of course, not having a *right* to do something does not mean one is *prohibited* from doing it. And our decisions offer nothing further in support of an absolute rule against recognizing a pro se filing by a counseled defendant. Put simply, those decisions were just wrong.

And this error is not harmless. After a judgment of conviction, defendants have a short window within which they can preserve their right of appeal, but absent an order allowing their counsel to withdraw, they are presumptively represented by counsel. In cases like this one, where counsel for some reason fails to take the steps that would preserve the right to appeal, an attentive and diligent defendant could save the appeal with a simple pro se filing, but our nullity rule leaves the defendant powerless to do so. And after our

2

recent decision in *Cook v. State*,[1] which eliminated the judge-made "motion for out-of-time appeal," that direct appeal is lost—unless the defendant can somehow revive it in a habeas corpus proceeding, where the defendant no longer has the right to counsel, may assert only constitutional claims, and is subject to a four-year statute of limitations.

In sum, our absolute nullity rule has no basis in either Constitution or statute, and it is virtually unreasoned, in conflict with our own decisions, and potentially destructive of the appeal rights of criminal defendants. Stare decisis does not require us to perpetuate a legal rule that is so obviously and harmfully wrong, and so we overrule our past decisions to the extent they held that a pro se filing by a counseled defendant is *always* a legal nullity.

As a result, our past decisions recognizing that courts retain discretion to allow hybrid representation control. This means a court has the discretion to recognize a timely and otherwise procedurally proper pro se filing made by a defendant who is still formally

---

[1] 313 Ga. 471, 506 (5) (870 SE2d 758) (2022).

represented by counsel. Given the logistical and legal problems hybrid representation can cause, we expect that courts will exercise this discretion only rarely, as when trial counsel has failed to act within the prescribed time period to preserve the defendant's right to appeal and a pro se filing would preserve that right. And when a court chooses to recognize such a filing, it should make that exercise of discretion clear on the record.

In this case, this means that the trial court must be given the chance in the first instance to determine whether to recognize any of the defendant's pro se post-conviction filings and consider them on their merits. We therefore vacate the judgment and remand with direction, as explained more fully below.

1. Garry Deyon Johnson was convicted of malice murder and robbery in connection with the 1997 killing of Irene Shields. Johnson was sentenced to life in prison without the possibility of parole plus a consecutive 20-year term.[2] The judgment of conviction and

---

[2] The State had sought the death penalty, but the jury recommended a sentence of life without parole.

4

sentence was entered on November 17, 2000.

On December 12, 2000, Johnson's lead trial counsel, Jack Boone, filed a motion to withdraw, which the trial court granted on the same day. Johnson's other appointed attorney, Luther McDaniel, did not move to withdraw at that time or any time thereafter.

The next day, Johnson filed a pro se "Extraordinary Motion for New Trial."[3] Two days later, Johnson sent a letter to the trial court clerk requesting his trial transcript, stating that "[a]t this time I have no attorney and wish to proceed with my appeal pro se." In January 2001, Johnson again wrote to the clerk, requesting copies of filings, and the clerk responded with the requested materials.

In September 2001, in response to further correspondence from Johnson, the clerk sent a letter informing him that an attorney, Paul David, had been appointed for his appeal and that Johnson would

---

[3] Before this filing, Johnson had also filed a pro se "Preliminary Motion to Vacate Judgment and/or Motion for New Trial" (filed on the day the verdicts were rendered) and a pro se "Motion for Judgment Not With Standing the Verdict" (filed on the day of his sentencing).

need to seek copies of any additional filings from the attorney. But later correspondence from September and October reflects that Johnson continued to seek transcripts directly from the court, informing the clerk that "[t]he appointed attorney . . . has not responded to any of my requests at all."[4] David never entered an appearance in the case.

Johnson continued corresponding with the clerk on his own. The record shows correspondence through August 2004, followed by a more-than twelve-year gap until December 2016, when Johnson sent a letter asking for various filings. In April 2017, Johnson sent a letter to the clerk stating that he had never gotten a ruling on his motions for new trial, that his trial attorneys were deceased or not practicing law, and that he was indigent.

In December 2017, Johnson's current appellate counsel entered an appearance in the case. At counsel's request, the court appointed

---

[4] Evidence from Johnson's eventual motion-for-new-trial hearing reflects that the supposed appointed attorney, Paul David, had no recollection of having been appointed and was disbarred in 2007 for, among other things, abandoning ten criminal-defendant clients during a period from 1999 through 2002. See *In re David*, 282 Ga. 517 (651 SE2d 743) (2007).

a special master to reconstruct, to the extent possible, Johnson's trial counsel's case file and to obtain other information, evidence, and transcripts from court staff, the court reporter, the Burke County Sheriff's Office and District Attorney's Office, and the GBI to assist in Johnson's counsel's review of the case.

In December 2018, the trial court entered a consent order granting Johnson leave to file an "out of time motion for new trial and appeal." Hearings were held on the motion in December 2018, May 2019, and May 2021. On January 28, 2022, the trial court denied the motion.

Through counsel, Johnson filed a notice of appeal on February 21, 2022. When the appeal was docketed in this Court, we initially dismissed it. We explained that the December 13, 2000 motion for new trial was a legal nullity because it was filed pro se at a time when Johnson was presumed to be represented by counsel, relying on *White v. State*, 302 Ga. 315, 319 (2) (806 SE2d 489) (2017);[5] the

---

[5] In *White*, we held that after conviction, a defendant is presumed to be represented by trial counsel, absent a formal withdrawal or substitution, at

later motion filed by counsel was untimely; and, to the extent it was filed with leave from the trial court as an out-of-time motion for new trial or appeal, those remedies were no longer cognizable after *Cook*.

But on reconsideration, we vacated the dismissal order and reinstated the appeal. In doing so, we asked the parties and invited amici curiae to address whether "a pro se filing made by a defendant who is actually or presumptively represented by counsel [is] always a nullity."[6]

2. The answer to this legal question should be an easy "no." Although defendants in Georgia do not have a constitutional or statutory right to hybrid representation, neither is there any constitutional or statutory prohibition against it, and courts otherwise have broad discretion to control their processes and those appearing before them. See, e.g., OCGA § 15-1-3. But although some

---

least through the end of the term of court in which the judgment of conviction was entered.

[6] We thank the Solicitor General's Unit of the Office of the Attorney General of Georgia, the Prosecuting Attorneys' Council of Georgia, the Georgia Association of Criminal Defense Lawyers, and the Public Defender Council for their helpful amicus curiae briefs.

of our earlier decisions recognized as much, later decisions began to apply an absolute rule that pro se filings by counseled defendants are legal nullities. That shift was not only in conflict with our earlier decisions but also unreasoned and obviously wrong.

(a) We begin with the concept of "hybrid representation." Speaking generally, hybrid representation refers to when a defendant acts on his or her own behalf in court while he is at the same time represented by counsel. See, e.g., *Cargill v. State*, 255 Ga. 616, 622 (3) (340 SE2d 891) (1986), overruled on other grounds, *Manzano v. State*, 282 Ga. 557, 560 (3) (b) (651 SE2d 661) (2007).

In the courts of our State today, there is no right to hybrid representation. No such right is recognized under the United States Constitution because asserting the right to be represented by counsel is considered a waiver of the Sixth Amendment right of self-representation. See *McKaskle v. Wiggins*, 465 U.S. 168, 183 (104 SCt 944, 79 LE2d 122) (1984); *Cargill*, 255 Ga. at 622 (3); *Burney v. State*, 244 Ga. 33, 35-36 (2) (257 SE2d 543) (1979). In the past, a right to hybrid representation was recognized under our state

9

Constitution, which provided that "[n]o person shall be deprived of the right to prosecute or defend his own cause in any of the courts of this state, in person, by attorney, *or both*." Ga. Const. of 1976, Art. I, Sec. I, Par. IX (emphasis added). See *Burney*, 244 Ga. at 36-37 (2) (construing "the express terms" of the 1976 Constitution as guaranteeing the right to represent oneself even while being represented by counsel); see also *Bloomfield v. Liggett & Myers, Inc.*, 230 Ga. 484, 484 (198 SE2d 144) (1973) (noting that this same provision was first adopted in the Constitution of 1877). But the right was eliminated from our current Constitution, which contains a provision almost identical to the earlier ones but notably omits the key phrase "or both":

> No person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state.

Ga. Const. of 1983, Art. I, Sec. I, Par. XII. See *Cargill*, 255 Ga. at 622-623 (3) (noting elimination of "or both" language from 1983 version). That revision was apparently proposed in order to "eliminate the problems created by" allowing "an individual who had

10

an attorney representing him at trial to assert his right of self-representation . . . and actively participate in the trial as co-counsel." *Nelms v. Georgian Manor Condo. Assn., Inc.*, 253 Ga. 410, 412-413 & n.7 (321 SE2d 330) (1984). And soon after our current Constitution was ratified, we held that this change indeed meant that "a person no longer has the right to represent himself and also be represented by an attorney, i.e., the right to act as co-counsel." Cargill, 255 Ga. at 623 (3) (citation and punctuation omitted). Accord *Seagraves v. State*, 259 Ga. 36, 39 (376 SE2d 670) (1989) ("a layperson does not have the right to represent himself and also be represented by an attorney").[7]

But the mere absence of a *right* to hybrid representation says nothing about whether hybrid representation may be *permitted*. Put

---

[7] We have, however, held that litigants who are lawyers cannot be barred from representing themselves as co-counsel. See *Seagraves*, 259 Ga. at 39; *Cherry v. Coast House, Ltd.*, 257 Ga. 403, 406 (3) (359 SE2d 904) (1987). In those situations, trial courts have broad authority to impose limits on the mechanics of the hybrid representation to prevent the potential for courtroom disorder and ensure that the litigant and his counsel "speak with one voice." Id. See also *Seagraves*, 259 Ga. at 39 (recognizing right to hybrid representation for lawyer-litigants, subject to trial court's authority to impose limits "'to insure the orderly disposition of matters before it'").

another way, that a court may deny a defendant's request for hybrid representation without violating a right does not answer the separate question whether a court may allow hybrid representation in any given case. As to that question, no one before us has identified anything in our Constitution or Code that prohibits hybrid representation. And in fact, our Code recognizes that a court retains wide discretion to control its "processes" as well as "the conduct of its officers and all other persons connected with a judicial proceeding before it." OCGA § 15-1-3 (4), (6). In short, even absent a right to hybrid representation, we are aware of no constitutional or statutory provision that precludes a court from exercising discretion to *allow* it when appropriate.

Some of our decisions have recognized this distinction. Soon after we first recognized that the right to hybrid representation had been eliminated from the current Georgia Constitution, we made clear that this change did not affect trial courts' discretion to *allow* hybrid representation. As we put it at the time, "although a defendant may not insist on acting as co-counsel, the trial court may,

12

as here, allow him to do so." *Hance v. Kemp*, 258 Ga. 649, 650 (1) (373 SE2d 184) (1988). We explained that, as with the choice to proceed pro se, "the record should reflect that [the defendant's] choice to proceed as co-counsel was made after the defendant was made aware of his right to counsel and the dangers of proceeding without counsel." Id. (cleaned up). Since then, a few of our decisions have reaffirmed these points. See *Isaacs v. State*, 259 Ga. 717, 731 (24) (386 SE2d 316) (1989) (explaining that "[e]ven if the court allows a defendant to act as co-counsel," the court retains discretion to require just one counsel to conduct voir dire of each juror because the defendant "does not have the right to act as co-counsel"); *Colwell v. State*, 273 Ga. 634, 638-639 (3) (544 SE2d 120) (2001) (rejecting argument that "a hybrid form of representation was forced upon" the defendant, but explaining that "although a defendant may not insist on acting as co-counsel, the trial court may allow him or her to do so once he or she has been advised of his or her right to counsel and of the dangers inherent in proceeding as one's own co-counsel" (cleaned up)); *Rivera v. State*, 282 Ga. 355, 362-363 (8) (647 SE2d 70) (2007)

13

(same).

The above decisions recognized that courts have discretion to allow hybrid representation when a defendant seeks to actively represent himself as co-counsel. A couple of other decisions suggested that this discretion also covered the decision whether to allow the more limited form of hybrid representation where a counseled defendant seeks merely to submit his own pro se filings. In *Eagle v. State*, 264 Ga. 1, 3 (5) (440 SE2d 2) (1994), the defendant filed a pro se brief in addition to the one submitted by his counsel. Noting that the defendant was represented by counsel and that he had no right to hybrid representation, we said that "the additional claims raised in Eagle's pro se brief will not be considered." Id. And in *Smith v. State*, 267 Ga. 372, 378 (12) (477 SE2d 827) (1996), we declined to "separately consider[]" a counseled defendant's "untimely supplemental enumerations of error filed pro se." Although we declined to recognize the pro se filings of counseled defendants in these decisions, we did not suggest that a court's discretion to allow hybrid representation (or not) worked any

14

differently for pro se filings than it would for defendants who wanted to serve as active co-counsel.

(b) But our decisions on pro se filings by counseled defendants soon lost the thread.

It started innocently enough: In *Johnson v. State*, 266 Ga. 775, 779 (9) (470 SE2d 637) (1996), we held that a trial court erred in "addressing the merits" of a motion for new trial filed pro se by a counseled defendant on the issue of ineffectiveness of trial counsel "while [the defendant] was still being represented by the trial counsel." This conclusion was not necessarily inconsistent with our prior decisions acknowledging a court's discretion to allow hybrid representation as a general matter. The problem in *Johnson* was not the defendant's attempt at hybrid representation as such, but that the defendant had brought—and the trial court had addressed—a pro se claim of ineffective assistance based on the conduct of the very counsel who was still representing him. Id. And our conclusion was not that the pro se filing itself was entirely without effect—to the contrary, we remanded the case for the trial court to "*consider* the

15

allegation of ineffective assistance" from the pro se filing on remand once the defendant was represented by new counsel. Id. (emphasis added). In short, *Johnson* stood for the narrow proposition that a trial court could not "address" a pro se claim of ineffective assistance of trial counsel while the defendant was still represented by that same trial counsel. See id. Accord *Kennebrew v. State*, 267 Ga. 400, 402 (2) (480 SE2d 1) (1996).

But after *Johnson* was decided, we began citing it for a different and much broader proposition: an absolute rule that pro se filings made while a defendant is represented by counsel are "invalid," *Ware v. State*, 267 Ga. 510, 511 & n.2 (2) (480 SE2d 599) (1997), or put another way, "unauthorized and without effect," *Cotton v. State*, 279 Ga. 358, 361 (5) (613 SE2d 628) (2005). See also *Britt v. Conway*, 283 Ga. 474, 476 n.3 (660 SE2d 526) (2008) (citing *Johnson* in concluding that pro se filing challenging trial court order did not put that order "at issue" on appeal because "an appellant does not have the right to be represented by counsel and also to represent himself" (cleaned up)). More recently, we have described

16

such filings as "legal nullities." See, e.g., *Sims v. State*, 312 Ga. 303, 303 n.2 (862 SE2d 507) (2021) (pro se filings made by counseled defendant were "legal nullities"); *White v. State*, 302 Ga. 315, 319 (2) (806 SE2d 489) (2017) (trial court correctly treated pro se filings by counseled defendant as "legal nullities"). And based on this rule, we have held that trial courts err when they rule on the merits of such filings. See, e.g., *Meheux v. State*, 309 Ga. 857, 858-859 (848 SE2d 844) (2020) (vacating order ruling on merits of counseled defendant's pro se motion for new trial); *Ringold v. State*, 309 Ga. 443, 445-446 (847 SE2d 181) (2020) (vacating order ruling on counseled defendant's pro se motion to withdraw plea); *Pounds v. State*, 309 Ga. 376, 384 (4) (846 SE2d 48) (2020) (holding that trial court was not authorized to rule on counseled defendant's pro se motion for new trial); *Ricks v. State*, 307 Ga. 168, 169-170 (835 SE2d 179) (2019) (vacating order ruling on counseled defendant's pro se filings); *Dos Santos v. State*, 307 Ga. 151, 160 (6) (834 SE2d 733) (2019) (vacating order ruling on counseled defendant's pro se motion to withdraw guilty pleas).

Unlike some of our earlier decisions addressing hybrid representation after the Constitution of 1983 was ratified, these decisions leave no apparent room for courts to exercise discretion to allow hybrid representation—not even in the limited form of a pro se filing. Instead, they each rejected the pro se filing at issue based only on the fact that a defendant was counseled when the pro se filing was made. See, e.g., *Sims*, 312 Ga. at 303 n.2 ("the pro se filings . . . are legal nullities *because Sims was still represented by counsel when he filed them*") (emphasis added); *White*, 302 Ga. at 319 (2) ("The trial court therefore correctly treated [the defendant's] pro se filings as legal nullities, *because he was represented by counsel* when he made them.") (emphasis added); *Johnson v. State*, 300 Ga. 252, 256 n.6 (2) (794 SE2d 60) (2016) ("*Appellant was represented by counsel* when he filed that [speedy trial] demand*, so* it was invalid.") (emphasis added); *State v. Porter*, 288 Ga. 524, 529 n.2 (2) (c) (4) (705 SE2d 636) (2011) ("This [speedy trial] demand was filed *while [the defendant] was represented by counsel.  For this reason*, the [courts below] correctly ruled that the demand had no legal effect.")

18

(emphasis added); *Williams v. Moody*, 287 Ga. 665, 668-669 (2) (697 SE2d 199) (2010) ("A pro se motion filed by a convicted defendant while represented by counsel is 'unauthorized and without effect.'"); *Cotton*, 279 Ga. at 361 ("*Since he was represented by new appellate counsel* at the time he filed this pro se motion, however, it was unauthorized and without effect.") (emphasis added).

The absolute rule applied in these decisions—that a pro se filing by a counseled defendant is a nullity, full stop—is not only in outright conflict with our earlier decisions recognizing a court's discretion to allow hybrid representation. Compare *Rivera*, 282 Ga. at 362 (8); *Colwell*, 273 Ga. at 638-639 (3); *Isaacs*, 259 Ga. at 731 (24); *Hance*, 258 Ga. at 650 (1). It is also based in an explanation that is both cursory and obviously wrong. When these decisions offer any support at all for this absolute rule, they pin it only on the point that a defendant in Georgia no longer has the *right* to hybrid representation. See, e.g., *Lopez v. State*, 310 Ga. 529, 536 (5) (852 SE2d 547) (2020) ("[A] criminal defendant 'does not have the right to represent himself and also be represented by an attorney.' [Cit.]

*Thus*, a pro se filing by a represented party is a legal nullity without effect.") (emphasis added); *Dos Santos*, 307 Ga. at 154 (3) ("Dos Santos's pro se motion to withdraw her pleas was unauthorized and without effect, *because* she had no right to represent herself at the same time she was represented by a lawyer") (emphasis added); *Tolbert v. Toole*, 296 Ga. 357, 363 (3) (767 SE2d 24) (2014) ("A criminal defendant in Georgia does not have the right to represent himself and also be represented by an attorney, and pro se filings by represented parties are *therefore* 'unauthorized and without effect.'") (emphasis added); see also *White*, 302 Ga. at 319 (2) (quoting that exact language from *Tolbert*); *Smith v. State*, 297 Ga. 214, 216 (4) (773 SE2d 209) (2015) (same). This is true, but it is not support for the absolute rule that follows. Not having a protected *right* to do something, without more, does not mean one is not *allowed* to do that thing. Yet these decisions offer nothing else to justify a flat prohibition against pro se filings made by counseled defendants.

(c) This wrong turn in our precedent is not a harmless one.

The problem rears its head in the important period right after

20

the entry of final judgment on a defendant's convictions and sentence. During that period, transitions in legal representation are common, and the defendant also faces tight deadlines for pursuing post-conviction review or an appeal. See, e.g., OCGA §§ 5-6-38 (a) (30-day deadline from entry of judgment for filing notice of appeal); 5-5-40 (a) (30-day deadline from entry of judgment for filing motion for new trial); 17-9-61 (b) (motion in arrest of judgment must be made during term in which judgment entered); *McKiernan v. State*, 286 Ga. 756, 757 (692 SE2d 340) (2010) (explaining that "a motion to withdraw a guilty plea may be entertained by the trial court . . . within the same term of court in which the plea was entered and the defendant sentenced"). See also *White*, 302 Ga. at 318 (2) (describing the post-conviction period as "a point in the proceeding when important decisions need to be made and actions potentially taken, often with short deadlines" for the filing of post-trial or post-plea motions or notices of appeal).If everything works like it is supposed to, either trial counsel or new appellate counsel, after conferring with the defendant, makes the proper filing to seek any appropriate

review. But sometimes that doesn't happen: although a defendant wishes to appeal, or move for a new trial, or withdraw a guilty plea, counsel fails to timely file the proper papers out of neglect or for any number of other reasons. In those cases, a defendant's pro se filing could save the right to these important kinds of review, including a defendant's one shot at a direct appeal. But our absolute rule deems such filings nullities if the defendant is still represented by counsel, eliminating that self-help option for preserving the defendant's rights.

And some of our more recent decisions have foreclosed arguments that might have relieved the harsh effect of that rule. First, we have rejected arguments that a pro se filing could be treated as valid where a defendant who was formally represented at trial was effectively without counsel at the time of a post-conviction filing. In *Tolbert*, we held that a trial court's on-the-record "indication" that it would grant a motion to remove counsel and counsel's later filing of a motion to withdraw were not enough to show that the defendant was no longer represented. *Tolbert*, 296 Ga.

at 362 (3). Instead, we concluded that the defendant remained represented—making any pro se filings nullities—because he could not point to a "formal withdrawal" demonstrated by an order allowing withdrawal. Id. And then in *White*, we held that "at a minimum," a defendant continues to be represented by his trial counsel until the end of the term of court in which his judgment of conviction is entered, "unless interrupted by entry of an order allowing counsel to withdraw or compliance with the requirements for substitution of counsel." 302 Ga. at 319 (2).[8] So when a defendant has been abandoned by counsel during the critical post-conviction period, these rules can interact with our nullity rule to prevent even an attentive and diligent defendant from preserving his right to

---

[8] We have carved out a narrow exception to *White*'s rule that applies "when a criminal defendant invokes his constitutional right to self-representation and that request is granted on the record in open court." *Walker v. State*, 308 Ga. 749, 753 (1) (843 SE2d 561) (2020). In *Walker*, we held that a pro se notice of appeal was valid, despite the absence of an order relieving counsel of his duties, where the defendant had expressly invoked his right to self-representation on the record after his sentence was pronounced, and the trial court, after engaging in a colloquy with the defendant, made a finding on the record that the defendant was freely, intelligently, and knowingly waiving his right to counsel. Id. Under these circumstances, the defendant's pro se motion for new trial, filed one day after the trial court's on-the-record finding, was deemed valid. Id.

23

appeal. See, e.g., *Jones*, 308 Ga. at 338 (noting that formal representation continued absent an order allowing withdrawal or proper substitution, and even "if Jones in fact was abandoned by her counsel while she was still formally represented, she could not have filed a notice of appeal").

We acknowledged this "unfortunate" consequence in *Dos Santos*, but we pointed out that defendants whose appeal rights were frustrated by ineffective assistance of counsel "have a remedy" because they "may seek an out-of-time appeal in the trial court or in habeas corpus." *Dos Santos*, 307 Ga. at 159 (5). See, e.g., *Jones*, 308 Ga. at 338 (holding that defendant was entitled to merits consideration of her motion for out-of-time appeal where she alleged her failure to file an appeal was due to trial counsel's abandoning her after sentencing).[9] The option of seeking an out-of-time appeal

---

[9] In the guilty-plea context, we have also admonished criminal defense lawyers that they "cannot simply abandon their . . . clients immediately after the defendants enter guilty pleas and are sentenced" and suggested that "plea counsel may protect their client's interests by filing a timely, bare-bones 'placeholder' motion to withdraw guilty plea," which preserves the defendant's right to pursue such relief and "might be amended later (by conflict-free new counsel if necessary)." *Dos Santos*, 307 Ga. at 157, 159 (5). Accord *Ringold*, 309 Ga. at 446 n.2.

in the trial court, however, is no more. Last year, this Court held that the motion for out-of-time appeal was "not a legally cognizable vehicle for a convicted defendant to seek relief for alleged constitutional violations" in the court of conviction. *Cook v. State*, 313 Ga. 471, 506 (5) (870 SE2d 758) (2022). Although *Cook* did not eliminate the out-of-time appeal as a *remedy* in *habeas* proceedings, it significantly narrowed the opportunities for defendants to revive appeal rights lost as a result of ineffective counsel. See *Dougherty v. State*, 315 Ga. 188, 196 n.6 (880 SE2d 523) (2022) (Ellington, J., concurring) (alluding to the effect of eliminating motions for out-of-time appeal on defendants whose counsel abandon them post-conviction).

In sum, after *Cook*, the potential that the nullity rule will apply in a way that prevents defendants from *ever* exercising their rights of appeal and other post-conviction review is even greater. In cases where a defendant's counsel fails to preserve those rights—whether because of abandonment or some other reason—and the defendant cannot secure an order allowing withdrawal in time, those rights are

25

lost. And the sole remedy for such a defendant is in habeas corpus, a proceeding in which the defendant no longer enjoys the right to counsel, may assert only constitutional claims, and is subject to a four-year statute of limitations. See OCGA § 9-14-42 (a), (c) (making habeas relief available for asserting "substantial denial of [one's] rights under the Constitution of the United States or of this state" and requiring such actions to be brought "within four years in the case of a felony"); *Gibson v. Turpin*, 270 Ga. 855, 857 (1) (513 SE2d 186) (1999) (noting that habeas is "'not designed as a substitute for direct review'" and that "there is no federal or state constitutional right to appointed counsel in Georgia habeas corpus proceedings" (citation and punctuation omitted)).[10]

3. For all of these reasons, we asked the parties in this case and amici to address the nullity rule in its current form. Their collective response is telling. Although they differ some in their views on the

---

[10] The extraordinary motion for new trial is not a viable solution for every forfeited direct appeal because we have held that such motions are not vehicles for asserting constitutional claims. See *Mitchum v. State*, 306 Ga. 878, 885 (1) (c) (834 SE2d 65) (2019).

wisdom of the current nullity rule as a policy matter and on potential alternatives to it, no one appears to dispute what we have covered so far: (1) Nothing in our Constitution or Code either prohibits hybrid representation as a general matter or requires treating pro se filings by counseled defendants as *always* nullities. (2) To the contrary, courts have broad discretion to control their processes and the conduct of those before them. (3) Our decisions adopting and applying the nullity rule offer no reasoning in support of it beyond the implicit and obviously wrong suggestion that the absence of a right to hybrid representation somehow prohibits it. (4) There is no serious argument that these decisions can be reconciled with our earlier decisions recognizing a court's discretion to allow hybrid representation. And (5) in the current legal landscape, the rule works real and irreparable harm to the appeal rights (and other rights of review) of criminal defendants whose counsel have abandoned them or otherwise failed to discharge their duties.

So the question reduces to whether to follow our decisions that have applied the absolute nullity rule. When we consider whether to

follow past decisions, stare decisis is the strong default rule. The doctrine not only keeps our law more consistent and stable, but it is essential to preserving the rule of law. See *State v. Jackson*, 287 Ga. 646, 658 (5) (697 SE2d 757) (2010) ("Stare decisis is an important principle that promotes the rule of law . . . ."); *Cobb v. State*, 187 Ga. 448, 452 (200 SE 796) (1939) ("The application of the doctrine of stare decisis is essential to the performance of a well-ordered system of jurisprudence."); *Ammons v. State*, 315 Ga. 149, 169 (880 SE2d 544) (2022) (Pinson, J., concurring) (following past decisions "promotes a system of equal treatment under the law rather than one built on 'arbitrary discretion'" (citing The Federalist No. 78, at 529 (Alexander Hamilton) (Jacob E. Cooke ed., 1961)).

In rare cases, however, following a past decision would do more harm to the rule of law than overruling it would. Our nullity rule presents one of those rare cases. As we have explained at length above, that rule is not only wrong but obviously so; unreasoned (bordering on accidental); in conflict with our own decisions; and can and does work genuine harm to important review rights of even the

most attentive and diligent criminal defendants. Moreover, stare decisis applies with less force to a judge-made rule that governs only "internal Judicial Branch operations" and so does not affect parties' out-of-court affairs. *Pearson v. Callahan*, 555 U.S. 223, 233-234 (II) (B) (129 SCt 808, 172 LE2d 565) (2009) (reasoning that "revisiting precedent is particularly appropriate" where doing so "would not upset expectations, the precedent consists of a judge-made rule that was recently adopted to improve the operation of the courts, and experience has pointed up the precedent's shortcomings"). Accord *Cook*, 313 Ga. at 490-491 (3) (c). Compare *Olevik v. State*, 302 Ga. 228, 245 (2) (c) (iv) (806 SE2d 505) (2017) (explaining that reliance interests are an "important consideration for precedents involving contract and property rights" because "parties may have acted in conformance with existing legal rules in order to conduct transactions"). For all of these reasons, stare decisis does not require preserving the nullity rule. See *Ammons*, 315 Ga. at 171-172 (Pinson, J., concurring) ("If the past decision in question is unreasoned, or if it disregards the basic legal principles that courts

29

use to do law, the argument for overruling is easier to make."); *Cook*, 313 Ga. at 487 (3) (b) (overruling decisions recognizing motions for out-of-time appeal because that remedy "ha[d] neither a statutory nor a common-law basis," and the decisions recognizing it failed to acknowledge the Habeas Corpus Act, were "devoid of reasoning showing why [the remedy] could or should exist," and "ignored precedent from this Court" rejecting such a remedy); *Gilliam v. State*, 312 Ga. 60, 63 (860 SE2d 543) (2021) (overruling decision that took jurisdiction over certain appeals for "judicial economy," "ignor[ing] the constitutional parameters of [the Court's] jurisdiction without any significant analysis"); *Pounds*, 309 Ga. at 382 (3) (overruling decision regarding effect of untimely motion for new trial as "unsound" and "inconsistent with applicable legal principles articulated in our other case law in this area"); *State v. Hudson*, 293 Ga. 656, 661-662 (748 SE2d 910) (2013) (overruling decision that "contain[ed] *no* analysis supporting its adoption of the count-by-count approach but instead adopt[ed] that approach as though there were no other alternative" (emphasis in original)).

In considering whether to overrule precedent, this Court has typically considered "factors such as" the "soundness" of the precedent's reasoning, its "age," its "workability," and "the reliance interests at stake." *Jackson*, 287 Ga. at 658. This "list of factors . . . has never purported to be exclusive," *Cook*, 313 Ga. at 485, and several of us have expressed concerns with those factors, or at least with how they are usually applied, see *Ammons*, 315 Ga. at 173 n.21 (Pinson, J., concurring) (criticizing factors as "inherently malleable" and not focused on rule-of-law concerns with overruling precedent); *Cook*, 313 Ga. at 510 (Peterson, J., dissenting). But in any event, those factors cut in favor of overruling the precedent at issue here, for many of the reasons explained at length above. We have already explained that the rule's reasoning was "unsound," which this Court has called "the most important factor" in that analysis. Id. We have overruled a number of decisions similar in age to the decisions from the 1990s and 2000s that adopted and applied the nullity rule. See, e.g., *Cook*, 313 Ga. at 503 (3) (e) (overruling 27-year-old precedent); *City of Cumming v. Flowers*, 300 Ga. 820, 832 (6) (a) (797 SE2d 846)

(2017) (overruling 21-year-old precedent); *Ga. Dept. of Nat. Resources v. Ctr. for a Sustainable Coast*, 294 Ga. 593, 601-602 (2) (755 SE2d 184) (2014) (overruling 19-year-old precedent); *Jackson*, 287 Ga. at 660 (6) (overruling nearly 30-year-old precedent). Rules of appellate procedure usually do not create significant reliance interests. See *Pounds*, 309 Ga. at 382 (3) (precedent about legal effect of late-filed motions for new trial and orders disposing of such motions involved only appellate procedure that did not implicate significant reliance interests); *Southall v. State*, 300 Ga. 462, 467 (1) (796 SE2d 261) (2017) (precedent about effect of prematurely filed motions for new trial involved only an issue of appellate procedure that did not implicate significant reliance interests). And as for "workability," however easy to administer an absolute nullity rule might be, it does not adequately account for the high cost to criminal defendants whose lawyers fail to act to preserve their appeal rights during the critical post-conviction period.

So we overrule our past decisions to the extent that they hold that pro se filings by counseled defendants are *always* legal

nullities.[11]

4. Having overruled the nullity rule in its absolute form, we are left with our past decisions that correctly recognized that courts retain discretion to allow hybrid representation. See *Rivera*, 282 Ga.

---

[11] Those decisions include but are not limited to *Meheux*, 309 Ga. at 858; *Ringold*, 309 Ga. at 446; *Pounds*, 309 Ga. at 384 (4); *Ricks*, 307 Ga. at 169-170; and *Dos Santos*, 307 Ga. at 154-155 (3).

We also disapprove any language in our prior decisions suggesting that pro se filings by counseled defendants are always nullities. See, e.g., *Dougherty*, 315 Ga. at 188 (noting that earlier appeal was dismissed because pro se motion for new trial that trial court had ruled on was "'a legal nullity'"); *Walker*, 308 Ga. at 752-753 (1) (noting with tacit approval our holding in *Tolbert* that because "Tolbert was represented by counsel when he filed his pro se notice of appeal," his notice of appeal was "a legal nullity"); *Jones*, 308 Ga. at 338 (noting in dicta that defendant "could not have filed" a notice of appeal while she was still formally represented by counsel and that "any pro se filing in this regard would have been a nullity"); *Sims v. State*, 312 Ga. 303, 303 n.2 (862 SE2d 507) (2021) (noting in dicta that pro se motions that trial court had not ruled on were "legal nullities"); *Howard v. State*, 307 Ga. 12, 12 n.1 (834 SE2d 11) (2019) (noting that earlier appeal was dismissed because pro se motion for new trial that trial court had ruled on was "a nullity"); *Veal v. State*, 301 Ga. 161, 167 (3) n.3 (800 SE2d 325) (2017) (noting in dicta that defendant's pro se motion to vacate conviction "had no legal effect"); *State v. Porter*, 288 Ga. 524, 529 n.2 (2) (c) (4) (705 SE2d 636 (2011) (noting in dicta that courts below had correctly ruled that pro se defendant's speedy-trial demand "had no legal effect").

Similarly, any Court of Appeals decisions are overruled to the extent they hold that pro se filings by counseled defendants are always legal nullities, and any language in any Court of Appeals decisions suggesting the same is disapproved.

at 362 (8); *Colwell*, 273 Ga. at 638-639 (3); *Isaacs*, 259 Ga. at 731 (24); *Hance*, 258 Ga. at 650 (1). See also *Eagle*, 264 Ga. at 3 (5); *Smith*, 267 Ga. at 377 (12). That includes the discretion to recognize pro se filings: a pro se filing by a counseled defendant is not a legal nullity *per se*. Instead, consistent with a court's general discretion to control its processes and the conduct of those who appear before it, a court has the discretion to recognize a timely and otherwise procedurally proper pro se filing made by a defendant who is still formally represented by counsel.[12]

We expect that courts will exercise discretion to recognize pro se filings by counseled defendants sparingly. As some amici note, hybrid representation usually "creates more problems than [it] can solve," *United States v. Couch*, 758 Fed. App'x 654, 656-657 (10th

---

[12] The Attorney General contends that allowing pro se post-conviction filings would "muddy counsel's ethical and constitutional obligations"— effectively letting attorneys off the hook for protecting their clients' appeal rights by giving clients the ability to fend for themselves. But this rule has no effect on counsel's ethical duties to their clients, including their duty to preserve their clients' appeal rights. See *Dos Santos*, 307 Ga. at 157 (5) ("Defense counsel are obligated to continue to represent their clients at least until the time for [seeking] post-conviction remedies expires (and if such a remedy is timely pursued, until it is resolved).").

Cir. 2018), and courts undoubtedly are sensitive to those problems, which may include the potential for undue delay, conflicting claims and arguments, and more. See, e.g., *State v. Debra A.E.*, 523 NW2d 727, 737 (Wis. 1994) (noting that "the arguments raised in a pro se brief may contradict and undermine the issues advanced in counsel's brief" and "the consideration of every argument that a defendant chooses to raise, in addition to those an attorney submits, could strain judicial resources"); *California v. Clark*, 833 P2d 561, 637 (Cal. 1992) (citing "undesirability of fruitlessly adding to the burdens of this court the time-consuming task of reading pro se documents" submitted by counseled defendants). But any such concerns may give way when recognizing a pro se filing would preserve a right of appeal that would otherwise be lost through no fault of the defendant. Exercising discretion under these circumstances would seem to us squarely "in the furtherance of justice." OCGA § 15-1-3 (4).[13]

---

[13] Such appeal-preserving filings include not only a notice of appeal but also those motions, such as motions for new trial, that extend the time for filing

Because we expect that the recognition of pro se filings by counseled defendants will be the exception and not the rule, unless the record indicates that the court recognized the filing, it will be presumed that the court did not do so. So when a court chooses to recognize such a filing—as when trial counsel has failed to act within the prescribed time period to preserve the defendant's right to appeal and the defendant timely makes a pro se filing that would preserve that right—it should make that exercise of discretion clear on the record.[14] That decision whether to recognize a pro se filing by

a notice of appeal. See OCGA § 5-6-38 (a) ("when a motion for new trial, a motion in arrest of judgment, or a motion for judgment notwithstanding the verdict has been filed, the notice [of appeal] shall be filed within 30 days after the entry of the order granting, overruling, or otherwise finally disposing of the motion"). For convictions on a guilty plea, a motion to withdraw the plea should also be considered an appeal-preserving filing.

[14] This is not to say that allowing an appeal-preserving pro se filing alone triggers a *Faretta* hearing, see *Faretta v. California*, 422 U.S. 806 (95 SCt 2525, 45 LE2d 562) (1975), or requires an express finding that the defendant made the choice to file knowingly and intelligently. Unlike the decision to allow active self-representation—whether as co-counsel or fully pro se—recognizing the validity of a pro filing merely allows the filing to preserve the defendant's rights and may well invite further inquiry from the court as to the status of the defendant's legal representation. Compare *Wiggins v. State*, 298 Ga. 366, 369 (2) (782 SE2d 31) (2016) (citing *Faretta* for principle that "[w]hen a defendant asserts the right to self-representation, it is the responsibility of the trial judge to ensure that the decision to dismiss counsel and proceed pro se has been knowingly and intelligently made and that the defendant has made the choice

a counseled defendant is committed to the court's sole discretion.[15]

In so holding, "we do not undo what has been done" with respect to any pro se filings in cases that have already been adjudicated through direct appeal. See *Cook*, 313 Ga. at 504 (3) (e). We have "long followed" the "pipeline" approach for determining how new rules of criminal procedure apply to criminal cases. Id. at 504 (4). Under this approach, "a new state rule of criminal procedure will be applied to all cases then on direct review or not yet final." Id. (cleaned up). Thus, our holding here applies to future cases and those pending cases whose direct appeals have not yet been adjudicated.

5. Which brings us back to Johnson's case. When we asked the parties and amici to address the nullity rule, we did so with the understanding that, to the extent the trial court's order purported to rule on Johnson's out-of-time motion for new trial, *Cook* would

---

to proceed without the benefit of counsel with 'eyes open'").

[15] Although many such decisions will be made by trial courts, the decision whether to recognize a pro se notice of appeal remains one for appellate courts to make. See *Jones v. Peach Trader Inc.*, 302 Ga. 504, 510 (II) (807 SE2d 840) (2017).

require that we vacate that order (as well as the order granting the motion seeking to file the motion) and direct the dismissal of those motions. See, e.g., *Polanco v. State*, 313 Ga. 598, 598-599 (872 SE2d 268) (2022) (vacating order denying motion for out-of-time appeal and remanding with direction to dismiss); *Rutledge v. State*, 313 Ga. 460, 461 (870 SE2d 720) (2022) (same). We thus recognized that our ability to reach the merits of Johnson's long-awaited appeal would depend on how we resolved the nullity-rule question.

Our holding today leaves open the possibility of a merits review for Johnson down the road, but not in this appeal. That is because the only order currently before us is the January 28, 2022, order denying Johnson's out-of-time motion for new trial. That order does not purport to rule on any motion other than the now-non-cognizable out-of-time motion for new trial. It does not purport to rule on the December 13, 2000 "Extraordinary Motion for New Trial," or on either of Johnson's other two pro se motions filed before that, see note 2. In fact, the order on its face reflects the court's view that those earlier motions were invalid, describing Johnson's efforts to

obtain an appeal as "belated." So it is clear that the proper disposition of the appeal now before us is to vacate the trial court's order and remand for the trial court to dismiss Johnson's motion for out-of-time motion for new trial and the motion seeking leave to file it. See *Cook*, 313 Ga. at 506 (5). However, on remand, the trial court is directed to exercise its discretion to determine whether to recognize and rule on any of the pro se post-conviction motions Johnson filed.[16]

*Judgment vacated and case remanded with direction. All the Justices concur.*

---

[16] Johnson has argued in the alternative that, despite the absence of an order permitting the withdrawal of co-counsel McDaniel, the order permitting the withdrawal of lead counsel Boone should be construed as extending to McDaniel as well. In support of this contention, Johnson cites Uniform Superior Court Rule 4.5, which at the time provided:

> [t]he entry of appearance or request for withdrawal by an attorney who is a member or an employee of a law firm or professional corporation shall relieve the other members or employees of the same law firm or professional corporation from the necessity of filing additional entries of appearance or requests for withdrawal in the same action.

Johnson contends that Boone and McDaniel should be treated as members of the same "law firm" or "professional corporation" for purposes of the withdrawal because both attorneys were appointed by the Indigent Defense Committee and acted in concert to represent him. We are not persuaded.